[Civil No. 4462. Filed October 26, 1942.]

[130 Pac. (2d) 59.]

C. H. TRIGG and LENA TRIGG, Husband and Wife, Appellants, v. THE CITY OF YUMA, a Municipal Corporation, and FAMA E. TOWNSEND, Appellees.

Mr. R. C. Bennett, for Appellants.

Mr. William H. Westover, for Appellees.

Mr. John A. McGuire, *Amicus Curiae.*

ROSS, J.—This action was brought by C. H. Trigg and Lena Trigg, husband and wife, to quiet their title to "a strip of land forty (40) feet in width off the rear of Lots One (1) and Two (2) of Block Ninety-five (95) of the City of Yuma."

The defendants, the City of Yuma and Fama E. Townsend, filed a joint answer to such complaint in which it is alleged that the city taxes on said property for the years 1932–1937, respectively, were:

| | |
|---|---|
| 1932 ............................. | $ 8.50 |
| 1933 ............................. | 8.50 |
| 1934 ............................. | 8.50 |
| 1935 ............................. | 6.45 |
| 1936 ............................. | 12.36 |
| 1937 ............................. | 5.10, |

and that plaintiffs had paid no part thereof; that said

taxes were levied and assessed against said property under and by virtue of the provisions of Ordinances No. 130 and No. 175 of the City of Yuma, relating to the collection of taxes, and in all respects in accordance with the terms and conditions of such ordinances; that thereafter and on, to wit, May 29, 1939, the City Tax and License Collector of Yuma, having theretofore duly published notice thereof, offered said delinquent property for sale to the highest bidder; that no one appeared to bid thereon, whereupon the same was sold to the City of Yuma for the sum of $70.42, being the amount of taxes plus interest, penalties and costs; that a certificate of sale of said property was issued to said city, as provided in said ordinances; that after the expiration of one year from the date of sale the said City Tax and License Collector executed and delivered to the city his tax deed conveying title to the described premises; that thereafter, on January 11, 1941, the city advertised the property for sale in accordance with law and within the time specified in the notice of sale and on, to wit, February 18, 1941, sold said property to defendant Fama E. Townsend for the sum of $275 cash, and thereafter the Mayor and City Recorder, being thereunto duly authorized, executed to her a deed of said property.

The case was tried before the court without a jury and resulted in a judgment in favor of defendants. From such judgment and the order denying their motion for a new trial, plaintiffs have appealed.

The evidence introduced by plaintiffs to support their action to quiet title to said property in them consisted of a deed from the city to C. H. Trigg, dated November 12, 1931, and delivered ''between the early part of 1935 and June 1936.'' The reason for the long delay in delivering the deed to Trigg was that the property was sold to him for labor and material and the city withheld delivery until the value of such labor and

material was equal to the consideration for the deed, which was stipulated to be $2,500.

While there is some doubt as to the legality of the transaction between Trigg and the city through which Trigg claims title to the described property, we think the city may not in this proceeding raise the question, for, when it assessed the property as belonging to Trigg, it admitted his title. That seems to have been the view of the trial court. The question, then, resolves itself to this: Were the taxes for which the property was sold a legal charge against the property, and was the procedure followed in the levy, assessment and collection of such taxes regular and in accordance with the law? The judgment of the trial court answered this question in the affirmative, and the question is was the court right in so doing.

Property taxes in the City of Yuma are levied, assessed and collected by the city under its own system of taxation and independent of state law. This power is given the city under its Charter, section 50, Article III, and sections 2 and 13, Article XIV. Ordinances No. 130 and No. 175 provide a system for the levy, assessment and collection of city taxes. It was under and by virtue of these provisions that the taxes here involved were levied and assessed.

Plaintiffs' position is that the provisions of sections 73–601 to 73–608, Arizona Code 1939, provide an exclusive method of taxation by cities and towns of the state; that such method was not followed and that, therefore, the property tax levied and assessed by the city was not legal. Section 73–601, Arizona Code 1939 (identical with section 3102, Revised Code of 1928, and a consolidation and revision of sections 1, 2 and 3 of Chapter 37, Laws of 1917), provides that the equalized value fixed by the board of supervisors of the county shall be the valuation for the purposes of city and town

taxation. It is to be observed that the equalized valuation mentioned in said section is not binding upon "a city or town organized and operating under the provisions of any special act or charter," but that such city or town "may avail itself of the benefits and privileges hereof, as if organized and operating under the general law." Section 73–601, *supra.*

 Yuma is a charter city organized under the provisions of section 2, Article XIII of the Constitution. It is a home-rule city. Its charter is its organic law, which must be "consistent with, and subject to, the constitution and the laws of the state." Section 2, Article XIII, *supra.*

 In *Home Owners' Loan Corporation* v. *City of Phoenix,* 51 Ariz. 455, 77 Pac. (2d) 818, 822, we said:

" . . . Unquestionably the city possesses the power to supply itself with the means to sustain life and to that end may assess and collect from its property owners taxes for its corporate purposes. As we said in *Barrett* v. *State,* 44 Ariz. 270, 36 Pac. (2d) 260, 261:

" 'It is plain that the securing of revenue for a city is peculiarly and emphatically a matter of local concern.' "

In *Clayton* v. *State,* 38 Ariz. 135, 297 Pac. 1037, 1041, it was said:

"The general powers conferred on the city by the freeholders' charter are those concerning municipal or local affairs. . . . The city does not assume under its charter all the powers that the state may exercise within its limits, but only powers incident to a city government. 'Rightful subjects' of legislation thereunder are therefore local or municipal concerns of the city. Under this grant of power the city cannot enter the field of general legislation, but must confine itself to the making of by-laws for its local government. In the latter field, under the Constitution so long as the legislation is in harmony with that instrument and the laws of the state it is valid and, under the provisions of section 398, Revised Code of 1928, prevails over state legislation conflicting there-

with. If, however, a city by-law is not about a matter of municipal concern but a matter of general statewide concern, it would not be a 'rightful subject' of legislation, as defined by the general grant of power in the charter. . . .''

While the legislature provided for a system of equalizing city and town taxes by giving that power to the board of supervisors of the county, it, at the same time and in the same act, negatived any notion that such method of fixing tax valuations was exclusive. On the contrary, it recognized that the constitution gave such units the right to adopt their own system of assessing and equalizing their taxable property for municipal purposes. If the legislature has the power under the constitution to provide that all cities and towns in the state shall have a uniform system of equalizing their property taxes, it has not exercised such power but has left it optional with chartered cities and towns as to whether they will have their own system of taxation and equalization or the method that empowers the board of supervisors to equalize their taxes.

We are satisfied that under the law the City of Yuma's plan of assessing, equalizing and collecting property taxes for the maintenance and operation of its government is in accordance with law and that plaintiffs' contention to the contrary is not tenable. The City of Phoenix has the same system of taxation.

Plaintiffs say the deed from the City of Yuma to them was not delivered until 1936. In other words, they contend that the title to the property remained in the city until the deed was delivered to them and that during the interim the property being municipal was exempt from taxation under subdivision 1, section 73–201, Arizona Code 1939. The record shows that the parties went through the form of completing the transaction on November 12, 1931; that on that day the city executed a deed of the property to Trigg and the latter

paid it with his check for $2,450, $50 having been theretofore paid on account of purchase price. It is true the deed was not delivered until 1936 and Trigg says the reason it was not was because the city held it as collateral security for the faithful performance of his contract for street work. He also says that at the time (November 12, 1931) he gave his check to the city for the balance of $2,450, the major part of his contract had been performed.

Accepting this transaction as legal, Trigg, although the actual evidence of title to the property had not been delivered to him, certainly owned an interest therein subject to taxation. Section 10 of Ordinance No. 130, so far as material, reads:

"Section 10. The term 'real estate' whenever used in this Ordinance shall be taken to mean and include the ownership of, or claim to, or possession of, or right of possession to any land within the City. . . ."

and the preceding section provides that all property, of every nature and kind, in the city is subject to taxation. The evidence is to the effect that Trigg exercised acts of ownership of the property by making excavations thereon. These facts clearly show that Trigg had a substantial and very tangible interest in the land from November, 1931 on, and that such interest was subject to taxation. See *Bowls* v. *Oklahoma City,* 24 Okl. 579, 104 Pac. 902, 24 L. R. A. (N. S.) 1299; *Morris* v. *Board of Commissioners,* 74 Okl. 199, 177 Pac. 900.

It seems quite clear under the law that Trigg owed the City of Yuma taxes on the property for the years 1932–1937, which he had not paid, upon the unfounded claim that he was not liable therefor because the legal title to the property was in the city and not in him. This claim, as we have seen, is not tenable.

He also would avoid the payment of said taxes upon the ground that they were not assessed each year

as the law provides, the facts being that for 1932 to 1935, inclusive, such property was not assessed to anyone. If the property escaped assessment those years, or any other years, it was the duty of the city assessor, under section 19 of Ordinance No. 130, to assess it "at its full cash value for each year it escaped assessment and also at its full cash value for the current year." So, whether the property was assessed annually or was "escaped" property later placed on the tax rolls, makes no difference; it owed the taxes.

The lien against the property for taxes for the years 1932 to and including 1937 was by the judgment of the court foreclosed and the property ordered sold in satisfaction thereof but subject to redemption as provided by law.

The property was sold to the City of Yuma on May 29, 1939 for such taxes, and thereafter, on June 18, 1940, the city executed a deed thereof to itself as the purchaser. The question is, had the period of redemption expired when the deed to the city was made and delivered. Sections 48 and 49 of Ordinance No. 130, *supra,* as amended, both indicate that the period of redemption from a delinquent tax sale was that provided by the state law at the time of redemption. Section 48 says that the right of redemption, when property is struck off to a purchaser for city taxes, is the same as "when offered for sale for state and county taxes"; and section 49 has this provision, when property is sold for delinquent taxes:

" . . . the same shall be subject to redemption as provided by the laws of the State of Arizona."

The period of redemption under the general law in 1920, the date Ordinance No. 130 as amended by Ordinance No. 175 became effective, was six months. Par. 1375 Revised Statutes of 1913 (Civ. Code). And the period of redemption from tax sales in May, 1939 was

"three (3) years from the date of sale. . . . " Sec. 73–823, Arizona Code 1939. If the provisions in the ordinances be construed as referring to the period of redemption at the time of their passage, then possibly it would be six months from the date of sale; but if such provisions be construed as referring to the period allowed for redemption at the time of sale, it would be three years from the date of sale.

We think the period of redemption is clearly indicated in section 48 of the ordinances by the following language:

"Section 48. At the time appointed for such sale, the City Tax and License Collector shall proceed and sell the property . . . necessary to make the taxes, penalty, interest and costs thereon. After commencing such sale, he shall continue, without interruption, except to make necessary adjournments from day to day, until the sale is completed, provided, however, that when real estate is so offered for sale, for City Taxes due thereon, and there is no bidder at such sale therefor, the same shall be struck off and sold to the City of Yuma by the City Tax and License Collector, *in like case and in like manner and with like effect and with like right of redemption as it may be struck off and sold to any person, (bidder at such sale) when offered for sale for State and County Taxes. . . ."* (Italics ours.)

See, also, section 12, Chapter 37, Laws of 1917.

If the sale had been for state and county taxes, there could be no question but that three years from the date of sale would be allowed for redemption, and it seems equally clear that period was intended to be allowed for redemption from a sale of property for city taxes. We believe the language of the ordinances is such that, when fairly interpreted, it conveys the meaning that the period of redemption under the general law is applicable to redemption under a sale for city taxes. That being true, the plaintiff-taxpayer's right to redeem

did not expire until three years after May 29, 1939, the date such property was sold to the city.

We hold that the foreclosure of the tax lien against the property for delinquent taxes and the tax sale thereunder were in accordance with law; but that the tax deed to the city was prematurely issued since the taxpayer, under the law, had at least three years from the date of tax sale in which to redeem from such sale and in this case he was given only a little over one year.

The judgment of the lower court is reversed and the cause remanded to afford the parties hereto an opportunity to conform with the law as to redemption, and for further proceedings in accordance with the law.

LOCKWOOD, C. J., and McALISTER, J., concur.