166 P.2d 589
**CITY OF PHOENIX v. ELIAS et ux.**

No. 4759.

Supreme Court of Arizona.

Feb. 26, 1946.

Richard Minne, City Atty., and William C. Fields, Asst. City Atty., both of Phoenix, for appellant.

Moore, Romley & Roca, of Phoenix, for appellees.

John L. Sullivan, Atty. Gen., Earl Anderson, Asst. Atty. Gen., and Edwin Beauchamp, Co. Atty., and Loretta C. Savage, Deputy Co. Atty., both of Phoenix, for amici curiae.

STANFORD, Chief Justice.

In the trial court the appellees herein were styled the plaintiffs, and we will hereafter designate the appellees the plaintiffs, and the appellant the defendant.

Plaintiffs brought their action in the superior court claiming that they were the owners in fee simple of certain real estate located in the City of Phoenix, Arizona, the property being described as lots 7, 8, 9 and 10, in block 34, City of Phoenix, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in book 2 of Maps at page 51 thereof. The complaint alleged that the defendant, City of Phoenix, made some claim to the property and asked that the city be barred from claiming any right or title to the property.

The defendant, City of Phoenix in its answer set forth that its claim was based on its general tax lien against the premises for unpaid real and personal property taxes which had been duly levied and assessed by the city pursuant to the laws of the State of Arizona for the years "1932 through 1943" and the amount of the lien for such taxes, together with penalties, charges and interest to February 10, 1944, was $4,287.86. The city further alleged that it claimed a general tax lien on the premises for the calendar year 1944.

Plaintiffs, replying to defendant's answer, alleged that they acquired the property by tax deed from the State of Arizona on January 6, 1944, and that by reason

thereof the general tax lien claimed by the city was discharged.

The property involved was sold to the state for delinquent state and county taxes and a certificate of purchase was issued to the state. After the expiration of the statutory period the state, in 1943, applied for and received a treasurer's deed.

The case was tried before the court without jury and judgment was rendered in behalf of plaintiffs, from which judgment defendant appeals.

There was but one assignment of error filed by the defendant, and it is as follows:

"The trial court erred in determining that the general tax lien of the City of Phoenix for its real and personal property taxes for the years 1932 to 1944, inclusive, duly levied and assessed against the property described in the complaint was extinguished and discharged by reason of the tax deed obtained by the plaintiffs on January 6, 1944, from the State of Arizona, and the City barred and estopped from claiming or asserting such lien."

The question involved is whether the City of Phoenix has a lien for taxes, theretofore levied and assessed, on property which has vested in the state by treasurer's tax deed and is subsequently sold at public sale and deed therefor issued by the state to the purchaser.

▇ After the sale of property to the state, as in this case for taxes, and until such time as the state makes a sale again to an individual, if the same is made, no taxes can be levied and assessed against the property because the state is exempt from taxation under the provisions of Article 9, Section 2 of the Constitution of Arizona.

▇▇ Taxes of the City of Phoenix are levied and assessed pursuant to the provisions and under authority of Chapter 18 of the charter of the City of Phoenix and Article 1 of Chapter 10 (Sections 1461-1470) Phoenix Municipal Code 1939. Accordingly it can be seen that the defendant City of Phoenix is following its own law in levying, assessing and collecting its taxes. Defendant is a home rule city organized under the provisions of Article 13, Section 2 of the Constitution of Arizona. Its charter, as stated in the case of Trigg v. City of Yuma, 59 Ariz. 480, 130 P.2d 59, 61, in the matter of the City of Yuma which also has a similar charter, "is its organic law, which must be 'consistent with, and subject to, the constitution and the laws of the state.' Section 2, Article XIII." Such a chartered city as the defendant may avail itself of the benefits and privileges of the general laws of our state as set forth in Article 6, Chapter 73, Sections 73-601 to 73-608, A.C.A.1939, but this defendant did not avail itself of such privileges. The defendant acting under its home-rule charter maintains its own assessor and makes its own assessment rolls on its own valuation.

■ The case of Board of Supervisors, etc., v. Miners & Merchants Bank etc., 59 Ariz. 460, 130 P.2d 43, 44, is where mandamus proceedings were brought by the Miners & Merchants Bank of Bisbee against the Board of Supervisors of Yuma County, Arizona, and the Board of Directors of the Gila Valley Power District and others, to compel the defendants to include in the budget of the district certain items. The power district was organized under the provisions of Chapter 173 of the Session Laws of 1919. We quote from said case, which includes part of said session laws:

" '* * * All taxes or assessments levied under this chapter are special taxes and shall be liens upon the lands against which they are assessed, and, whenever the full title to any land within the district is acquired under the public land laws, from the state or the United States, the amounts of any and all taxes in this chapter provided for, which have been levied against said land and which remain unpaid, shall become immediately due and be collected in the same manner as other delinquent taxes are collected; * * *' :

"So far as lands which had passed to the state by virtue of a tax deed are concerned, we think there can be no question. Paragraph 4845, R.C.S.A.1913, expressly provides that the only method of divesting a tax lien is by payment of the tax or sale for delinquent taxes. There has been no change in this rule except that a third method of foreclosure of a mortgage to the state was added in 1931. Laws 1931, c. 103. State v. Martin [59 Ariz. 438], 130 P.2d 48. Under our tax sale procedure, after the period of redemption has expired and a deed has finally issued to the purchaser, all previous tax liens are wiped out and the land is in no manner subject thereto. The constitution of Arizona expressly provides that the property of the state is not subject to any form of taxation. Sec. 2, Art. 9, Const. of Arizona. So long, therefore, as the land is owned by the state after tax deed is issued it is not subject to taxation for district purposes, and the tax lien for taxes thereon previously existing for those purposes is wiped out. We think, therefore, that so far as such lands are concerned the taxes which had been levied thereon are uncollectible."

We now quote portions of Sections 73-838 and 73-839, A.C.A.1939.

"73-838. List of real estate held by state under tax deed—Notice of sale.—The board of supervisors, on or before the first Monday of November, in each year, shall prepare a list of the real estate within such county held by the state by tax deed, giving a full description of each tract, together with the name of the former owner therof, if known, and the total amount of taxes, penalties, and costs, including the unpaid charges of the county treasurer and recorder, and shall advertise the same

for sale at private sale at the office of the board * * *."

"73-839. Sale of property held by state. —The board of supervisors may, after such advertisement, sell such real estate to the highest bidder for cash, and upon such sale shall execute and deliver to the purchaser, at his cost, a deed conveying to him the title of the state in and to the tract so purchased. The deed shall be acknowledged by the chairman and clerk of the board. The purchase money shall be paid to the county treasurer, who shall distribute and credit the same to the several funds entitled thereto * * *."

■ Accordingly, the county treasurer when the funds from the sale of this property are paid over to him distributes this money to each of the taxing agencies appearing on the county tax roll for the years prior to the execution of the deed to the state for which the taxes have not been paid. As stated, the state while it owns the property prior to sale, no taxes are levied and assessed because of the exemption from taxation of our state under Article 9, Section 2 of our constitution.

The position we take in the instant case is also in keeping with the case of Hallenbeck v. Yuma County, 61 Ariz. 160, 145 P.2d 837, 843, where the principal question for determination was whether a sale of realty to the sovereignty for delinquent state, county and power district taxes prevent the land sold from being taxed for power district purposes after sale has been completed and the land sold has been returned to private ownership. In that case we said:

"Considering all of the provisions of the Power District Act, as well as the other pertinent statutes of Arizona, we hold: (1) that Power Districts were organized for public purposes and are quasi municipal corporations; (2) that they are given certain sovereign taxing powers, and that the intent of the legislature was to make their district indebtedness general obligations for the payment of which the whole district is obligated; (3) that the sale of real property in such a district for unpaid taxes discharges all tax liens and assessments theretofore levied against the property sold; (4) that the property involved in this litigaton was not subject to district assessments after its sale to the State of Arizona, nor was it subject thereto after the issuance of the tax deed to the State and before the sale to plaintiffs; (5) that when the property again passed back into private ownership by sale to plaintiffs it at once became subject to taxation for district purposes. The land remains within the district and is, therefore subject to taxes subsequently lawfully levied and assessed for any district purpose, such as: maintenance and operation, bonded indebtedness, and past delinquencies, whether of principal or interest. Since all lands of the district are entitled to equal benefits, it would be arbitrary and unjust to make

100

any distinction between lands theretofore sold for taxes once they went back on to the tax roll, and of other lands in the district that had not passed through this tax sale process."

As to the year 1944 for which the defendant city claims a general tax lien on the premises involved, the same rule must be applied as that by this court in Aztec, etc., Co. v. County of Navajo, 9 Ariz. 308, 80 P. 318. In that cause, under territorial statutes relative to property subject to taxation and the assessment of such property, it was held that property exempt belonging to the government at the time the lien attached (then the first day of February) when transferred to a private owner during the assessing season would be subject to the lien for and be taxable for that year. Applying the rule of the Aztec case to the state statutes as they now stand, it is our view that though property may be owned by the state on the first Monday in January, and therefore not be subject to the levy of the tax, if it is conveyed to a private party between the first Monday in January and the first day of May, it will, under the provisions of section 73-402, A.C.A.1939, be subject to taxes for that particular year.

Section 1464 of the Phoenix Municipal Code of 1939 requires the city assessor, between the first Monday in January and the first Monday in May of each year to ascertain and assess all property in the city subject to taxation. These provisions are, in effect, similar to section 73-402, supra. Section 1467 of the Phoenix Municipal Code provides, "Every tax due upon real property is a lien against the property assessed * * * on, from and after the first Monday in January preceding the assessment and levy thereof." This is somewhat similar to section 73-506, A.C.A. 1939, which provides, "Every tax levied under the authority of this chapter upon real or personal property shall be a lien upon the property assessed. The lien shall attach on the first Monday in January in each year, * * *." Neither the state law nor the city charter provides in terms a definite date when property shall be subject to assessment and taxation. In the absence of such a definite date, it was, as stated, held in the Aztec case that any property theretofore exempt which came into private ownership during the assessing season would become subject to taxation. We quote from the opinion [9 Ariz. 308, 80 P. 319]:

"* * * Under our law, it is clearly the duty of the assessor, between the dates named in the statute, to assess property subject to taxation that he may find in the county; and, in the absence in the statute of any fixed date at which property then owned shall be assessed for a given year, it is his duty within that time to assess for that year all property subject to taxation, whether acquired prior or subsequent to the 1st day of February. .or does the

fact that the statute provides that the lien of the tax shall attach on the 1st day of February, while it may by custom afford a convenient date for the vendor and vendee to determine, as between themselves, who shall take the burden of the payment of the tax, make it, in the absence of such express provision as we have referred to, any less the duty of the assessor to assess, during the period while such assessment is in progress, all such property as he may find to be taxable and untaxed, though acquired by the owner subsequent to the date when the lien attaches. The property in question, therefore, though acquired by the appellant subsequent to February 1st, but prior to June 1st, and assessed prior to the last-mentioned date, was legally subject to taxation for that year."

We, therefore, hold that although on the first Monday of January, 1944, and up to the 6th day of January, the date of the deed from the state, the property involved was not subject to the lien for 1944 taxes, that it did become subject to such lien both for state and city purposes upon its transfer to the plaintiff.

The judgment is affirmed insofar as the tax levies of the City of Phoenix levied and existing prior to January 6, 1944, the date of sale, are concerned, but reversed as to assessments and levy of taxes by defendant City of Phoenix for the year of 1944 after January 6th.

LA PRADE and MORGAN, JJ., concur.