195 P.2d 562

CITY OF TUCSON et al. v. ARIZONA ALPHA OF SIGMA ALPHA EPSILON, Inc., et al.

No. 5011.

Supreme Court of Arizona.

July 6, 1948.

Thos. J. Elliott, of Tucson, for appellant, City of Tucson.

J. C. Padilla, of Tucson, for appellant, Tucson Title Ins. Co.

Ben C. Hill, of Tucson, for appellees.

STANFORD, Chief Justice.

This was an action for a declaratory judgment, and from a judgment validating the deed in question rendered in favor of plaintiffs (appellees), the defendants (appellants) prosecuted their appeal to this court.

The case was submitted to the trial court on the pleadings and an agreed statement of facts, which reads:

"The map of Buell's Addition to the City of Tucson discloses a 10-foot alley running east and west between the north line of Block 2 of Buell's Addition and the south line of Block 32 of Feldman's Addition. This alley was actually about 14 feet wide.

"The map of Feldman's Addition shows a 15-foot alley running north and south through Block 32, and that the 50-foot lots in this block running east and west from the alley have a uniform width of 192.5 feet. A part of the property owners on the east side of the north and south alley in Block 32 of Feldman's Addition erected buildings and fences which encroached on

the east side of this alley from 8.7 feet to 9.8 feet. The property owners on the west side, however, erected their fences and buildings from 8.5 feet to 10 feet west of the alley. Both of these alleys and the encroachments and set backs are shown on plaintiffs' Exhibit A attached to the complaint.

"The result of this was that a north and south alley about 15-feet wide remained open but over 10 feet of it encroached on lots on the west side.

"Continuously from about the year 1901 plaintiffs and their predecessors in interest have been the owners of Lot 30 in Block 32 of Feldman's addition except the north 35 feet thereof and Lots 6, 7 and 8 in Block 2 in Buell's Addition and have been in possession claiming under a duly recorded deed all that part of the east and west alley lying between the south property line of Lot 30 of Block 32 Feldman's Addition and the north line of Block 2 of Buell's Addition.

"The plaintiffs predecessors in interest constructed a building which encroached upon both of these alleys. In order to clear the title to said east and west alley and the part of the north and south alley encroached upon by said building an arrangement was made with the City that plaintiffs would cause said north and south alley in use to be dedicated to the City together with a triangular piece of land at the south end thereof for better access thereto, and that in exchange therefor the City would vacate certain parts of both alleys and deed

them to plaintiffs. These parcels are shown on Plaintiffs' Exhibit B and C attached to the complaint.

"This arrangement was carried out by both sides and as a result Ordinance No. 1020, plaintiffs' Exhibit D, was passed and adopted and the property in dispute was deeded by the City to plaintiffs.

"The City did not publicly advertise for bids on this property prior to making the deed to the plaintiffs. The defendant Tucson Title Insurance Company has declined to issue title insurance on the property deeded to the plaintiffs and the validity of the deed from the City to plaintiffs is the question for determination by the Court."

Appellants have submitted but one assignment of error which is supported by many propositions of law. The assignment is: "That the judgment was contrary to the law and the facts upon which the case was tried, and the Court erred in holding that Section 16-801, A. C. A. 1939 does not constitute any limitation upon the City of Tucson as to the manner of disposing of its real property."

The validity of the deed from the City of Tucson is thus questioned by appellants on the grounds that the City of Tucson did not, prior to the execution of said deed, properly advertise for bids as provided in section 16-801, supra. Said section reads as follows: "Power to sell—Public advertising.—Cities and towns, may sell, dispose of, and convey, all or any part of their real or personal estate, whether said property

be devoted exclusively to public use or otherwise; such sale or disposition of such property, shall not, however, be made until after public advertising for bids therefor shall have been made for at least thirty (30) days in some newspaper of general circulation within said city or town, and the posting of notices in three (3) or more public places therein, or, if there be no such newspaper within the corporate limits of said city or town, then by posting in three (3) or more public places therein, notices for bidders for the property proposed to be sold."

Supporting defendants' theory they quote from the case of McDonald v. Price, 45 Utah 464, 146 P. 550, 552, the following:

"* * * The question, as argued by counsel, is not one of power to sell, but it is one respecting the exercise of that power.

"While the towns and cities of this state are given power generally to sell, lease, or dispose of their property, yet it is clearly within the province of the Legislature to provide the mode or method by or through which the power may be exercised. This may be done with respect to all or only a particular kind of property. If the Legislature has provided a particular method to be followed by the cities and towns in selling or leasing, or otherwise disposing of, their property, such method must be at least substantially followed. This is elementary. 28 Cyc. 664; 3 McQuillin, Mun. Corps. § 1180. In Cyc. it is said:

" 'If no formal mode of making a municipal contract is prescribed by charter, statute, or ordinance, then the contract may be made in the method common to all corporations. But if the method of contracting is prescribed by valid law, that method must be observed, and a contract unexecuted in whole or in part, made in any other method, or defectively made by the prescribed method, may not be enforced at the suit of either party.' "

Also defendants quote from the case of Board of Control of State of Arizona v. Buckstegge, 18 Ariz. 277, 158 P. 837, 839, as follows: "* * * The law is well settled that, where the method of exercising powers conferred by statute upon municipal corporations is specifically prescribed, that method must be followed. City of Nevada v. Eddy, 123 Mo. 546, 27 S.W. 471; Lincoln St. Ry. Co. v. City of Lincoln, 61 Neb. 109, 84 N.W. 802; 2 Dillon on Municipal Corporations, §§ 571, 572; City of Fort Scott v. W. G. Eads Co., [8 Cir.], 117 F. 51, 54, 54 C.C.A. 437. And when any other method than that prescribed is followed, such acts are without jurisdiction and wholly void. * * *"

Further defendants rely on Barron G. Collier, Inc., v. Paddock, 37 Ariz. 194, 291 P. 1000, 1001, wherein it adopts the rule stated in 3 McQuillin Mun. Corps. 836, (second edition), as follows: "Generally, however, the statutes or the charter, or both, more or less specifically provide how municipal contracts shall be made and ex-

ecuted; and it is settled that the municipality can make a contract only in the method prescribed, and if not so made the contract is invalid and unenforceable. Where the mode is prescribed and limited by law this mode is considered to be exclusive, e. g., requiring competitive bidding, or where the contract must be authorized by ordinance, or must be in writing."

The City of Tucson is a municipal corporation organized under article 13, section 2 of the constitution of Arizona, which provides that cities with a population of more than 3,500 "may frame a charter for its own government consistent with, and subject to, the constitution and the laws of the state, * * *." Such charter cities are often referred to as "home rule cities."

In Clayton v. State, 38 Ariz. 135, 297 P. 1037, 1041, we said: "The general powers conferred on the city by the freeholders' charter are those concerning municipal or local affairs. (Citing cases.) The city does not assume under its charter all the powers that the state may exercise within its limits, but only powers incident to a city government. 'Rightful subjects' of legislation thereunder are therefore local or municipal concerns of the city. Under this grant of power the city cannot enter the field of general legislation, but must confine itself to the making of by-laws for its local government. In the latter field, under the Constitution so long as the legislation is in harmony with that instrument and the laws of the state it is valid and, un-der the provisions of section 398, Revised Code of 1928, (section 16-303, A. C. A. 1939) prevails over state legislation conflicting therewith. If, however, a city by-law is not about a matter of municipal concern but a matter of general statewide concern, it would not be a 'rightful subject' of legislation, as defined by the general grant of power in the charter. * * *"

Chapter 16, A. C. A. 1939, beginning with section 16-101, et seq., relates generally to cities and towns; article 1 provides for the reincorporation of cities under a board of trustee government; article 2 provides for the incorporation under a common council form of government; article 3 provides for incorporation under a charter form of government; article 4 relates to officers of cities and towns; and article 8 relates to sale of property by municipalities.

Section 16-801 under this last named article is quoted above. This is the section relied upon by appellants as constituting a limitation on the City of Tucson in the mode of exercising its power to sell and dispose of its real estate. As disclosed by the statement of facts the property of the city was disposed of by ordinance by way of exchange for other property, and the property of the city was not sold after public advertising for bids as required by section 16-801, supra.

Cities and towns, regardless of how organized, have only such powers as are expressly or by implication conferred upon

them. McClintock v. City of Phoenix, 24 Ariz. 155, 207 P. 611.

The question before us is, did the City of Tucson have the power to dispose of its property in the manner in which it did? Its charter provision provides as follows: "(4) To purchase, receive, have, take, hold, lease, use and enjoy property of every kind and description, both within and without the limits of said City, and control and dispose of the same for the common benefit." Chapter 4, section 1, subsection 4, Charter of the City of Tucson.

Among other powers conferred upon the City of Tucson by its charter is that contained in the chapter relating to the powers of the mayor and council, which reads as follows: "To provide for the sale of property belonging to the City, which is not needed by or which is not suited for the use of the City, or which is held in trust for the City or the inhabitants thereof." Chapter 7, subsection 29, Charter of the City of Tucson.

It is thus seen that the power to dispose of its real estate is expressly conferred upon it by its charter. By the provisions of section 16-303, A. C. A. 1939, which supplements section 2 of article 13 of the constitution, it is provided that in case of conflict the charter provisions shall prevail over existing laws and operate as a repeal or suspension of laws to the extent of such conflict, but that "* * * such charter shall be consistent with and subject to the state constitution, and not in conflict with the constitution and laws relating to the exercise of the initiative and referendum and *other general laws of the state not relating to cities."* (Emphasis supplied.)

It is thus apparent that a charter city is sovereign in all its "municipal affairs" where it has the power. By its charter it was given the power to dispose of its real estate and to provide for the method of its disposition. It is clear that the provisions contained in Chapter 16, A. C. A. 1939, relating to cities and towns has no application to charter cities. This statement is made upon the assumption that there are no other general laws of the state not relating to cities contained within the numerous sections contained in said article 16.

One of the limitations on charter cities expressed in section 16-303, supra, is that powers conferred by charters and ordinances enacted thereunder are not valid where they are contrary to "other general laws of the state not relating to cities." This court has repeatedly construed statutes which have been determined to be general laws of state-wide application and interest, not to be within the realm or jurisdiction of the powers of municipalities including charter cities.

In the Clayton case, supra, we determined that the state highway code is a general law not relating to cities. In City of Phoenix v. Breuninger, 50 Ariz. 372, 72 P.2d 580, it was held that the act of the legislature relating to dairy and dairy products and

creating the office of dairy commissioner was an enactment of a general law not relating to cities in that it was of state-wide concern and that the legislature had occupied the field and declared the rule. Likewise in American-La France, etc., Corporation v. City of Phoenix, 47 Ariz. 133, 54 P. 2d 258, it was held that the state budget law prohibiting the creation of public obligations in any one year in excess of the amount specified in the budget for that year was binding upon home rule cities in that the state act was a declaration of a broad public policy of general interest. In State v. Jaastad, 43 Ariz. 458, 32 P.2d 799, we held that the state minimum wage law bound home rule cities upon the theory that the legislature had occupied the field and that by virtue of the fact that the legislation was of more than local interest.

Briefly, the rule is that where the legislature enacts a law of state-wide concern and when it is apparent that the legislature has appropriated the field and declared the rule, its declarations are binding throughout the state, and all cities and municipalities, including charter cities, are precluded from legislature upon the same subject matter (State v. Jaastad, supra) though they are not precluded from enacting provisions on the same subject matter which go beyond and are more stringent or restrictive than those provided for in the state statutes. City of Phoenix v. Breuninger, supra.

The Clayton, Breuninger, Jaastad and American-La France cases are all illuminating and fairly demonstrate what is patently a matter of general concern. A perusal of cases from other jurisdictions indicates that there is a twilight zone wherein it is difficult to discern with positive assurance that legislation is of general concern, or is merely of local or municipal concern. We believe in view of our constitution and the code sections involved that the manner and method of disposal of real estate of a city is not a matter of state-wide public concern. It is of no interest to the cities of Phoenix, Yuma, or any other city or town in the State of Arizona, what the provisions of the charter of the City of Tucson provide in this respect. The people of Arizona, through their duly elected representatives, should not be concerned with legislation looking to the intricacies of management of a large city. Its problems are myriad and personal. It is for this reason that the constitution authorized cities of a certain size to enact charters for their self-government, within the limitations of the constitution. We therefore hold that the sale or disposition of property by charter cities is not a matter of general or public concern, and that the provisions of section 16-801 relating to the sale of real estate, which is a limitation upon the powers of cities and towns organized under article 2, chapter 16, A. C. A. 1939, have no application to charter cities and constitute no limitation upon them. See City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 164 P.2d 598.

 

In 43 C.J., Municipal Corporations, sec. 249, p. 249, note 85, after stating if the statute or charter conferring a municipal power prescribes the manner in which it shall be exercised, it is generally mandatory, it continues:

"* * * On the other hand, if the mode of exercise is not prescribed in the act or charter conferring the power or in some other statute, the corporation may exercise the power in any usual and appropriate manner, according to its own discretion; * * *"

"The rule is held to mean that where powers are granted in general terms and the mode of exercise of same is not prescribed the board of aldermen may determine such mode. This is but a statement in other words, of the familiar maxim that there inheres in a grant of power to a municipal corporation all the necessary incidentals to render the grant effectual." State v. Hackman, 273 Mo. 670, 202 S. W. 7.

In the instant case by chapter 7 of the Tucson charter relating to the powers of mayor and council, subsection 33 of section 1 provides: "(33) To pass ordinances and resolutions and to adopt orders upon any subject of municipal control, or to carry into force and effect any powers of the municipality, subject to the provisions of this Charter."

In this instance the council saw fit in exchange for the property herein concerned to follow a permissible method as provided in said subsection 33 and did enact an ordinance providing for the disposition of this property without a public sale, though we understand that it is their usual practice to sell by advertised call for bids.

For the foregoing reasons the judgment of the lower court is affirmed.

LaPRADE and UDALL, JJ., concur.