293 P.2d 438

**CITY OF PHOENIX, a municipal corporation, Horen Foster, Mayor, Frank G. Murphy, Margaret B. Kober, J. R. Williams, C. N. Walters, John F. Sullivan and Allen L. Rosenberg, Members of and Constituting the Council of the City of Phoenix, and B. W. Bear, Tax Collector of the City of Phoenix, Appellants,**

v.

**ARIZONA SASH, DOOR & GLASS COMPANY, a corporation, Appellee.**

**No. 5963.**

Supreme Court of Arizona.

Feb. 7, 1956.

William C. Eliot, City Atty., George T. Fike, Fred F. Bockmon, James F. Haythornewhite, Asst. City Attys., Phoenix, for appellants.

Ryley, Carlock & Ralston, Lewis, Roca, Scoville & Beauchamp, Phoenix, for appellee. Jennings, Strouss, Salmon & Trask, Cunningham, Carson, Messinger & Carson, McKesson & Renaud, James E. Flynn, Samuel C. Jefferies, Phoenix, of counsel.

PHELPS, Justice.

This is an appeal from an order granting a motion for summary judgment in favor of plaintiffs below in an action brought to recover taxes paid under protest. On March 31, 1949, the City of Phoenix enacted ordinance No. 5121 assessing a privilege tax upon all persons doing business in the City of Phoenix. This tax was imposed upon the gross business done or the gross proceeds of the business and was graduated from $\frac{1}{16}$ to

one-half of one per cent, dependent upon the type of business that the taxpayer conducted. On December 30, 1952, this ordinance, as amended, was chapter 17, article 2, Code of the City of Phoenix, 1951. Upon this date the Arizona Sash, Door and Glass Company which had paid a tax levied and assessed under this chapter, under protest, filed a suit against the City of Phoenix to recover the sum of $991.77. It is stated in the brief of appellant that only the question of the power of the City to assess, levy and collect a privilege license tax is presented in this appeal.

It is first claimed that the trial court erred in holding that the City of Phoenix did not have the power to assess, levy and collect a privilege license tax for the reason that the charter specifically gives it such power.

It is a settled principle of law in this jurisdiction that municipalities, regardless of how organized, have only such legislative powers as have been expressly, or by necessary implication, delegated to them by constitution or by the legislature. City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon, 67 Ariz. 330, 195 P.2d 562; Gardenhire v. State, 26 Ariz. 14, 221 P. 228. These powers will be strictly construed. City of Flagstaff v. Associated Dairy Products Co., 75 Ariz. 254, 255 P.2d 191.

The City of Phoenix was organized and operates under what is called a "home rule charter" which was framed and approved by the inhabitants under the provisions of section 2, article 13, of the constitution. Home Owners' Loan Corporation v. City of Phoenix, 51 Ariz. 455, 77 P.2d 818. A home rule charter adopted in this manner may not contravene any provisions of the constitution or general laws but must be consistent with and subject thereto. City of Phoenix v. Elias, 64 Ariz. 95, 166 P.2d 589; City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 164 P.2d 598; Trigg v. City of Yuma, 59 Ariz. 480, 130 P.2d 59. Such a charter grants its possessor certain rights and privileges free from interference by the legislature. These rights have been variously designated in legislation, decisions and constitutions as matters of local concern or as municipal affairs. Luhrs v. City of Phoenix, 52 Ariz. 438, 83 P.2d 283. The securing of revenue for a city has been held to be "peculiarly and emphatically a matter of local concern". Barrett v. State, 44 Ariz. 270, 36 P.2d 260, 261. But the power of taxation under the constitution inheres in the sovereignty of the state and may be exercised only by the legislature except where expressly delegated to political subdivisions of the state or to municipal corporations. The authority of municipalities to levy a tax must be made clearly to appear and doubts, if any, as to the power sought to be exercised must be resolved against the municipality; the power to tax is a separate, independent power and exists in municipal corporations only to the extent to which it

is clearly conferred by the charter or state statutes and its existence cannot be inferred or deduced from other powers conferred. Maricopa County v. Southern Pac. Co., 63 Ariz. 342, 162 P.2d 619; Wise v. First Nat. Bank of Nogales, 49 Ariz. 146, 65 P.2d 1154; Home Owners' Loan Corporation v. City of Phoenix, supra.

It will be necessary, therefore, to examine both the constitutional grant authorizing the adoption of the home rule charter by the City of Phoenix and the provisions of the charter itself to determine whether the city council had the power to enact legislation exacting the tax questioned in this litigation.

Section 2, article 13 of the state constitution provides insofar as here material that if the proposed charter is ratified by a majority of the qualified electors voting thereon it shall be submitted to the Governor for his approval and that the Governor shall approve it, if it be not in conflict with the constitution or the laws of the state, and it further provides that:

"* * * Upon such approval said charter shall become the organic law of such city and supersede any charter then existing (and all amendments thereto), and all ordinances inconsistent with said new charter. * * *"

Chapter IV, section 2, paragraph 28 of the charter of the City of Phoenix states that it shall have the power:

"To license, for the purpose of regulation and revenue, all and every kind of business, profession, calling, trade or occupation not prohibited by law to be transacted or carried on in the city; to fix the rates of licenses upon the same and provide for the collection thereof by suit or otherwise; to provide penalties for transacting such business, professions, callings, trades, or occupations, without license when the same is fixed and prescribed."

It specifically grants to the City the power to *license for the purpose of regulation and revenue all and every kind of business, etc.,* in the City of Phoenix *and to fix the rates of licenses upon the same and to provide for the collection thereof.*

It is our view that this charter provision empowers the city council to exact by ordinance a license tax for the privilege of doing business in the City. Revenue is defined by Webster's New International Dictionary, 2d Ed., as:

"The annual or periodical yield of taxes, excise, customs, duties, rents, etc., which a nation, state, or municipality collects and receives into the treasury for public use; public income of whatever kind."

Inasmuch as the term "revenue" is synonymous with taxes, it is obvious that the framers of the city charter in using the term, "to license for the purpose of regulation and revenue * * * and to fix the rates of licenses upon the same * * *," intended to vest the commission with power to license any business, profession, trade,

etc., in the city either for the purpose of regulation or for the purpose of revenue.

As stated in McCarthy v. City of Tucson, 26 Ariz. 311, 225 P. 329, 330, the charter authorized and empowered the common council:

"* * * 'to license and regulate all and every kind of business, profession or occupation * * *; to fix the rates of license tax * * *.' "

and the court held that a license tax on attorneys assessed and levied pursuant thereto was legal as a revenue measure. It based its opinion upon the fact that following the authority to license and regulate, *it gave the power also to fix the rates of the license tax*. It held this indicated an intent that the license imposed was for revenue rather than regulation and inasmuch as the practice of law needed no regulation and was not subject to regulation under the police power of the state, the ordinance was clearly a revenue measure.

We held both in the Home Owners' Loan Corporation case and in Trigg v. City of Yuma, supra, that municipalities unquestionably possess the power to supply themselves and collect from their property owners taxes for their corporate purposes. Both Yuma and Phoenix at the time were operating under home rule charters. In the City of Glendale v. Betty, 45 Ariz. 327, 43 P.2d 206, we said that taxes are of three kinds, poll, ad valorem and excise; that all taxes that are not ad valorem or poll taxes are excise taxes. The tax here involved is an excise tax levied and collected for the privilege of engaging in business within the City of Phoenix.

No distinction can be made between the power to levy and collect an ad valorem tax and the power to levy and collect a privilege tax for corporate purposes for the reason that the latter may be as essential to the economic vitality of a city as the former.

■ The above provision of the charter is not in conflict with the constitution or with the laws of the state and is peculiarly of local concern. In Buntman v. City of Phoenix, 32 Ariz. 18, 255 P. 490, we held that the provisions of the charter of the City of Phoenix were equivalent to an act of the legislature granting the powers set forth therein and that such charter provisions had supplied the necessary legislation to carry the constitutional provisions into effect.

The declared purpose of the privilege tax ordinance, chapter XVII, article 2, Code of the City of Phoenix, 1951, providing for the collection of the tax here involved is to raise revenue for the City of Phoenix. Section 5 thereof, among other things defines taxpayer to mean "any person liable for any tax hereunder", and section 6 provides insofar as here material that:

"There is hereby levied and shall be collected by the collector for the purpose of raising revenue to be used in defraying the necessary expenses of the city to the extent hereinafter provided, the privilege taxes measured by

the amount or volume of business done by the persons on account of their business activities and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule:

\*    \*    \*    \*    \*    \*

"(c) At an amount equal to one-half of one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within the city in the following businesses:

"Selling any tangible personal property whatsoever at retail, except bonds and stock."

This ordinance is couched in language substantially identical with section 73–1303, 1952 Cum.Supp.; A.C.A.1939. The only material difference between the ordinance and the statute is in the rate of tax assessed.

Of this tax it was said in the case of Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 254 P.2d 1029, 1031:

"The tax imposed by the act is not a sales tax as such but *is a tax upon the privilege of engaging in business* measured by the amount or value of business done. State Tax Commission v. Quebedeaux Chevrolet, 71 Ariz. 280, 226 P.2d 549. Subsection (c) 1, supra, levies privilege taxes at the rate of 2% of the gross proceeds of sales or gross income from the business of a person engaged, within this state, in the business of selling tangible personal property at retail. The taxable event under the act is the engaging in business within the state."

█ █ Summarizing, we hold the tax imposed by the provisions of the ordinance in question is a tax upon the privilege of engaging in business in the City of Phoenix measured by the amount of value of business done; that chapter IV, section 2, paragraph 28 of the charter of the City of Phoenix is not in conflict with the constitution or the laws of the state; that paragraph 28 thereof authorized the common council of the City of Phoenix to enact the ordinance and to levy the privilege tax provided for therein and that the tax is therefore valid and enforceable.

Plaintiff contends in its brief that "under the legislative processes the state of Arizona has preempted the excise tax field and cities such as Phoenix are precluded from legislating a similar excise tax." This identical question has already been decided in the case of Barrett v. State, supra, contrary to plaintiff's contention. Its claim that the state has preempted the field is therefore without merit. It is immaterial that both the title and possession to a portion of the tangible property sold passes to the purchaser outside the corporate limits of the city. As above stated, the tax is

not on the sale. Arizona State Tax Commission v. Ensign, supra.

The judgment of the trial court is reversed and the cause remanded with directions to enter judgment for the City of Phoenix.

LA PRADE, C. J., UDALL and WINDES, JJ., and CHARLES C. BERNSTEIN, Superior Court Judge, concur.

STRUCKMEYER, J., having disqualified himself, Honorable CHARLES C. BERNSTEIN, Superior Court Judge of Maricopa County, was called to sit in his stead.