412 P.2d 693

CITY OF PHOENIX, a municipal corporation, and Alexander A. Cordova, City Assessor and Ex Officio Tax Collector of the City of Phoenix, Arizona, Appellants and Cross-Appellees,

v.

PHOENIX NEWSPAPERS, INC., an Arizona corporation, Appellee and Cross-Appellant.

No. 7334.

Supreme Court of Arizona.

En Banc.

March 30, 1966.

Merle L. Hanson, City Atty., Phoenix, John R. Franks, former City Atty., assisted by Ben C. Pearson and Robert J. Backstein, Asst. City Attys., for appellants-cross-appellees.

Gust, Rosenfeld & Divelbess, by John C. Wesley, Phoenix, for appellee-cross-appellant.

UDALL, Justice.

Phoenix Newspapers, Inc., plaintiff, brought this action in Superior Court of Maricopa County against the City of Phoenix to recover excise taxes paid to the defendant under protest. In its amended complaint plaintiff described itself as a corporation duly organized and existing under the laws of the State of Arizona, having its principal place of business in the city of Phoenix, Maricopa County, State of Arizona. The amended complaint also stated the following:

"III

"Plaintiff is presently, and at all times hereinafter referred to has been conducting a publishing business within the City of Phoenix, State of Arizona, and is duly licensed under Section 11 of Ordinance No. G–93 of the City of Phoenix, to engage in the publishing business in Phoenix.

"IV

"Plaintiff is engaged in the business of publishing the Arizona Republic, Phoenix Gazette, and the Arizona Weekly Gazette, selling advertising therein to both local and national advertisers, and selling the papers to readers both within and without the corporate limits of the City of Phoenix.

"*     *     *     *     *     *"

The plaintiff is licensed under Section 11 of Ordinance G–93.  Ordinance G–93 is:

"An Ordinance Imposing a License Tax for the Privilege of Engaging in and Carrying on any Business within the city of Phoenix; Providing for Licenses and Fixing the Amount of License Tax upon said Businesses; Providing for the Collection and Paying of such Tax; Providing Penalties for the Violations of the Provisions hereof; Repealing all Ordinances and parts of Ordinances in Conflict herewith; Fixing an Effective Date; and Declaring an Emergency."

The plaintiff was taxed pursuant to Section 2(b)7 of the Ordinance, which reads as follows:

"Section 2.  IMPOSITION OF THE TAX.—From and after the effective date of this ordinance there is hereby levied and shall be collected by the collector for the purpose of raising revenue to be used in defraying the necessary expenses of the City of Phoenix to the extent hereinafter provided, the privilege taxes measured by the amount or volume of business done by the persons on account of their business activities and the amounts to be determined by the application of rates against values, gross proceeds of sale, or gross income, as the case may be, in accordance with the following schedule:

"(a) *  *  *

"(b) At an amount equal to one-fourth of one per cent of the gross proceeds of sale or gross income from the business upon every person engaging or continuing within the City of Phoenix in the following businesses:

*     *     *     *     *     *

"7.  Publication of newspapers, magazines or other periodicals and publications, when published within this city and including the gross income derived from subscriptions, advertising and notices."

Defendants, city of Phoenix, a municipal corporation, hereinafter referred to as the City, and Alexander A. Cordova, City As-

sessor and Ex Officio Tax Collector of the City of Phoenix, caused an audit to be made on the plaintiff's records during January 1960 for the period from January 1, 1957 through December 31, 1959. During the entire audit period, the plaintiff in computing and remitting its tax to the City deducted from its gross income revenue from national advertising. From May 1, 1958 through December 31, 1959, plaintiff in computing and remitting its tax to the City deducted from its gross income revenue received from sales of newspapers outside the corporate limits of the City.

On February 11, 1960, the City issued and served on the plaintiff its debit voucher No. 1127 assessing the plaintiff an additional $17,583.10, representing tax on the above items deducted by the plaintiff in computing and remitting its tax. On February 23, 1960 the plaintiff paid under protest the above assessment and thereafter petitioned the defendants for a hearing requesting that the privilege tax be redetermined and corrected.

In its "Notice of Payment of Tax under Protest" and in its "Petition for Hearing and Redetermination" the plaintiff described its business as follows:

> "The Company conducts a publishing business at 120 East Van Buren St., Phoenix, Arizona which is duly licensed under Sec. 11 of Ordinance No. G–93, * * *"

A hearing was duly had and, by an Order dated July 12, 1960, the defendants upheld the assessment. Thereafter the plaintiff commenced this action in Superior Court to recover the taxes paid under protest and other taxes not paid under protest. Both plaintiff and defendants filed motions for summary judgment. The Superior Court ruled that plaintiff was exempt from the payment of tax upon that portion of gross income or gross proceeds of sales derived from sales of newspapers outside the corporate limits of the city of Phoenix, and that the plaintiff was exempt from the payment of tax upon that portion of gross income or gross proceeds of sales derived from sales of national advertising. The court also held that the plaintiff could not recover taxes not paid under protest. From this judgment the plaintiff appeals.

A judgment was rendered in favor of the plaintiff in the amount of $17,583.10. From this judgment the defendants appeal.

The defendants maintain the trial court erred in granting summary judgment for plaintiff, for the reason that income derived from sales of national advertising and sales of newspapers without the corporate limits of the city of Phoenix should be included in the measure of the tax which was gross income or gross proceeds of sales.

Defendants contend the tax involved is an excise tax levied upon the privilege of engaging in business within the city of Phoenix, as distinguished from a poll or ad valorem tax; that a privilege license tax

is not a sales tax and should not be enforced in the same manner as a sales tax but that the tax should be collected for all business done whether inside or outside the corporate limits of the city.

The plaintiff contends that Ordinance G–93, as amended, does not include in its measure of tax the amount of gross income or gross proceeds of sales made outside the limits of the city, and it is the position of plaintiff that Ordinance G–93, Section 2(b)7 applies only to business conducted within the limits of the city itself.

We have held Ordinance No. G–93 to be constitutional. It taxes not sales, but rather the privilege of engaging in a business in the city of Phoenix. City of Phoenix v. Borden Co., 84 Ariz. 250, 326 P.2d 841; City of Phoenix v. Arizona Sash, Door & Glass Co., 80 Ariz. 100, 293 P.2d 438. See also, Arizona State Tax Commission v. Ensign, 75 Ariz. 220, 254 P.2d 1029. This Court, in the case of City of Phoenix v. Borden Co., supra, interpreting Sec. 2 (c) of Ordinance G–93, held that the tax applied only to proceeds of sales or gross income from business engaged in within the corporate limits of Phoenix, and not to retail sales beyond its corporate limits. In *Borden*, the City argued that the tax applied to selling of taxable personal property by the company, both within and outside the city limits. This Court disagreed with that contention and concluded the tax applied only to the gross proceeds of sales

or gross income from business within the city.

The identical language is used in Sec. 2 (c) and Sec. 2(b) of Ordinance No. G–93, with the exception that the tax rate is different in each section. Since the language is identical in each section of the Ordinance, although it applies to different types of business, it would seem to follow that the tax under Sec. 2(b)7 applies to that portion of plaintiff's business carried on within the corporate limits of the city.

Section 2(b)7 of the Ordinance levys a privilege tax in an amount equal to one-fourth of one per cent of the proceeds of sale or gross income of every person engaging or continuing within the City of Phoenix the business of publishing newspapers, magazines or other periodicals. Other paragraphs of Ordinance G–93 impose a privilege tax upon the gross proceeds of sales derived from the business without reference to the pertinent words "within the City of Phoenix." Using this phrase would seem to show an intention to measure the tax on events occurring within the limits of the city. "It is not for this court to reconstruct the language of the ordinance so as to make the subject of the taxation the privilege of engaging in the business * * *" of publishing newspapers, magazines, or other periodicals. City of Phoenix v. Borden, supra.

The tax imposed by Sec. 2(b)7 of Ordinance G–93 is measured by the amount of

value of the business done within the geographic area imposing the tax. The business of publication admittedly takes place in the city of Phoenix, thus the city of Phoenix is the taxing area.

The *Borden* case quoted with approval the case of City of Sedalia ex rel. and to Use of Ferguson v. Shell Petroleum Corp., 81 F.2d 193, 196, 106 A.L.R. 1327 (8th Cir., 1936), that:

"there is a presumption that the governing body of the city was legislating with reference to the conduct of business within the territorial limits of the city, and there is nothing in the provisions of the ordinances indicating that it was the intention to give them extraterritorial effect."

There is nothing in the ordinance in question indicating the City intends the privilege tax to be measured by proceeds derived from sales outside the territorial limits of the city. There are many transactions and events requiring expenditures of both time and money outside the city of Phoenix before and after the printing of the newspaper. The wording of the Ordinance indicates it was never intended that proceeds or income from business transacted without the city limits would be taxed by the city, and the city under Sec. 2(b)7, of the ordinance can tax only that portion of gross income or proceeds of the publishing business that was conducted within its corporate limits.

▆▆ We agree with the lower court that the portion of the ordinance in question comes within our decision in the *Borden* case, not only as to sales outside the city limits, but, also, as to that portion of plaintiff's gross income attributable to national advertising. The activities with regard to the sales of national advertising take place outside the city of Phoenix, and therefore are not includable in the gross income subject to the privilege tax under Sec. 2(b)7 of Ordinance G–93.

The defendants' second assignment of error contends the trial court erred by finding:

"that the City of Phoenix is discriminating against Phoenix Newspapers, Inc., by not uniformly applying the ordinance, and causing an unreasonable classification by administrative action which violates the due process and equal protection of the law."

In view of our decision in reference to Assignment of Error No. 1 it will not be necessary to rule on the question raised by Assignment of Error No. 2.

The plaintiff, appealing from the trial court's ruling that taxes not paid under protest cannot be recovered, assigns as error the following:

"The lower court erred in denying plaintiff's claim for recovery of privileged license taxes paid voluntarily and not under protest to the City of Phoenix

during the period of January 1, 1957, through April 30, 1958, which taxes were based upon sales of newspapers made outside of the corporate limits of the City of Phoenix."

■ The general rule at common law is that voluntary payment of taxes without protest and not under duress cannot be recovered by the taxpayer if such payment was made through a mistake on the part of the taxpayer and was due to his own neglect. Apparently the rationale in tax cases follows the statement from Pitt v. City of Stamford, 117 Conn. 388, 167 A. 919, which reads as follows:

"To accord a right of recovery in every case where, after assessments have been made without appeal, budgets and tax rates predicated thereon, the taxes paid without objection or protest, and the moneys expended for the public purposes, it afterward develops that some mistake has been made in the assessment, would work disastrous results. It must of necessity be confined to extreme and exceptional cases."

But cf., Maricopa County v. Leppla, 89 Ariz. 220, 360 P.2d 227, 84 A.L.R.2d 1129.

Section 16 of Ordinance G–93 provides, in part:

"If any person having made the return provided in such ordinance feels aggrieved by the assessment made upon him for any month by the Collector, he shall pay the amount of such assessment before the delinquent date and shall at that time give notice to the Collector that all or part of such payment is made under protest."

Plaintiff admits the payments were not made under protest and were voluntarily made. It is too late for plaintiff to contend it is entitled to a credit for the taxes paid under Ordinance G–93. Recovery of taxes erroneously paid being a matter of legislative grace, statutory procedure must be complied with. Peterson v. Sundt, 67 Ariz. 312, 195 P.2d 158.

■ The appellant contends that Section 24 of Ordinance G–93, which provides that excess payments which have been made may be credited or returned by the collector, permits recovery of the taxes paid. The lower court, however, held that the tax was not one paid under a mistake but that it was voluntarily paid, and Section 24 does not apply to a three year audit. We agree, and since the taxing authority did not make a specific allowance for recovery as provided in Section 24, the holding of the lower court with respect to the denial of a recovery for taxes not paid under protest is affirmed. See Maricopa County v. Arizona Citrus Land Co., 55 Ariz. 234, 100 P.2d 587.

Judgment affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and McFARLAND, J., concur.

NOTE: Justice Lorna E. Lockwood did not participate in the determination of this appeal.