594 P.2d 86

**UNIVAR CORPORATION, a Delaware Corporation, Appellant,**

v.

**CITY OF PHOENIX, a body corporate, and Ralph W. Beal, Treasurer of the City of Phoenix, Appellees.**

**No. 13933.**

Supreme Court of Arizona,
In Banc.

April 5, 1979.
Rehearing Denied May 1, 1979.

Shimmel, Hill, Bishop & Gruender, P. C. by Lawrence J. Lee, Phoenix, for appellant.

Andy Baumert, III, City Atty., Philip M. Haggerty, Asst. City Atty., Phoenix, for appellees.

GORDON, Justice:

This appeal involves the application of a privilege license tax imposed by the appellee, the City of Phoenix (city), upon the predecessor of the appellant taxpayer, Univar Corporation (Univar). The Superior Court denied Univar's motion for summary judgment and granted both the city's motion for summary judgment and its motion to dismiss certain counts of Univar's amended complaint. Assuming jurisdiction pursuant to 17A A.R.S., Arizona Rules of Civil Appellate Procedure, rule 19(e), we affirm the rulings of the Superior Court.

Univar is a Delaware corporation in the business of selling such articles as laundry and cleaning supplies, industrial chemicals, agricultural and mining supplies, and scientific equipment. It is a multi-state concern, which has an office, warehouse and related facilities within the City of Phoenix, although its corporate headquarters are located in San Francisco, California. The city's

privilege license tax is imposed by assessment pursuant to city ordinances upon persons "on account of their business activities within the City." Phoenix City Code, Chap. 14, Art. I, § 14–2 (1969). One of these activities is the selling of tangible personal property at retail. Phoenix City Code, Chap. 14, Art. I, § 14–2(a)(8) (1969). Univar's predecessor paid $17,053.25 of its assessment under protest in November 1973, contending that this amount was based upon gross sales consummated outside the city limits of Phoenix and that the tax does not apply to such sales.

The validity of the assessment was upheld following an administrative hearing. Univar then initiated suit in Superior Court. Both parties filed motions for summary judgment. The court granted the city's motion, finding the tax not unconstitutional on its face. It concluded that the City Charter authorizes imposition of the tax to include both intercity and intracity sales and that the taxable event under the ordinance is the engaging in business within the city and not the sale itself. The court specifically stated that it entered no judgment or findings with respect to Univar's allegation that the tax was discriminatorily applied or enforced. This allegation was later abandoned by stipulation.

After this ruling, while the discrimination claim was still pending, Univar sought and was granted leave to file an amended complaint. The amended complaint raised as new grounds for the alleged invalidity of the assessment the following three allegations: (1) Some of the gross receipts upon which the tax was assessed came from sales of mining supplies or mining equipment and were, therefore, exempt under the City Code; (2) Some of the gross receipts came from sales of farming supplies, also exempt under the Code; (3) Some of the sales were to manufacturers and became an integral part of the manufactured product and were also exempt under the Code.[1]

1. These exemptions are provided as follows by both the current Phoenix City Code, § 14–40, and by the Code as it existed at the time of Univar's audit period:

222

The city moved to dismiss the counts in the amended complaint that contained these new allegations. It based its position on Univar's failure to have raised the issue of exempted sales in its original protest. This motion was granted. The court thereafter issued an amended judgment incorporating its granting of both the city's motion for summary judgment and motion to dismiss. A motion for new trial was filed and denied.

Having filed a timely notice of appeal, Univar raises two issues for our consideration:

(1) The Superior Court should have considered the new allegations in the amended complaint despite their omission from the tax protest;

(2) Sales consummated outside the city limits of Phoenix are not subject to the privilege license tax imposed by the City Code, and in failing to so rule, the Superior Court erred.

■ The first issue involves the scope of review by the Superior Court of the city's administrative adjudication of the tax assessment. We must decide whether grounds for relief not raised in the tax protest, and therefore not argued at the administrative hearing, could be raised for the first time before the Superior Court on review.[2] Resolution of this question requires interpretation of Chap. 14, Art. 1, § 14–29 of the City Code as it existed when Univar protested its assessment.[3] This section established the procedure for challenging the tax assessment, including the procedure for judicial review, and provided in pertinent part:

"(a) If any person having made the return provided in this Article feels aggrieved by the assessment made upon him for any month by the Collector, he shall pay the amount of such assessment before the delinquent date and shall at that time give notice to the Collector that all or part of such payment is made under protest. Such notice shall be in written form, addressed to the Collector, *setting forth grounds and reasons for such protest* and that a certain part thereof, or that the total sum, is protested.

"The provisions of this Article shall not apply:

\*  \*  \*  \*  \*  \*

"(h) To gross proceeds of sale or gross income derived from the sale of tangible personal property which directly enters into and becomes an ingredient or component part of any manufactured, fabricated or processed article, substance or commodity for sale in the regular course of business;

"(i) To gross proceeds of sale or gross income derived from the sale of livestock, poultry, seed, feed, fertilizer, insecticides, fungicides, seed treating chemicals and other agricultural chemicals and supplies, to persons engaging or continuing in the business of farming, ranching or feeding livestock or poultry, but not including equipment for use or consumption in these businesses;

\*  \*  \*  \*  \*  \*

"(k) To sales made by persons engaging or continuing in the business of processing, manufacturing, fabricating, modifying, assembling or repairing, except when those engaging in such businesses make retail sales of a character not otherwise exempt, in whole or in part, from the tax upon the sale of tangible personal property at retail.

\*  \*  \*  \*  \*  \*

"(l) To sales of tangible personal property sold at retail by persons engaging or continuing in the business of manufacturing, processing, fabricating, modifying or assembling, providing the tangible personal property sold is not the same as or similar to tangible personal property being sold through distributors, jobbers, wholesalers, retailers or other persons than those substantially and principally engaging or continuing in the actual manufacturing, processing, fabricating, modifying or assembling thereof;

"(m) To sales of mining supplies, not including capital equipment or capital machinery for use or consumption in the business of mining;
\*  \*  \*."

2. Univar, at one point in its brief, contends that the exemptions were discussed at the administrative hearing, apparently implying that the issues were, therefore, raised before the administrative body. After reviewing the hearing transcript, we reject this implication. At the hearing, one of Univar's attorneys specifically stated that the only sales in dispute were those *made outside the city.*

3. The section has since been changed and now expressly provides that "[n]o grounds of illegality of the tax shall be considered by the court other than those set forth in the petition filed with the City Auditor  \*  \*  \*." *Phoenix City Code*, Chap. 14, Art. I, § 14–29(g).

"(b) Within ten days thereafter he may petition the Collector for a hearing setting forth the reasons why such petition should be granted and the amount by which such tax should be reduced. The Collector shall grant such hearing and shall notify the petitioner of the time and place fixed for such hearing.

"(c) After such hearing the Collector shall make such order in the matter as may appear to him just and lawful and shall furnish a copy of such order to the petitioner.

"(d) Within twenty days after the entry of any such order, such person may bring an action or suit against the Collector to recover any part of the tax claimed to be illegally collected. *The Superior Court of the county in which such person resides or is located shall have original jurisdiction of any action or proceeding to recover any such tax* claimed to be unlawfully collected. *It shall be necessary for the taxpayer to protest against the payment of the tax in the manner herein provided* in order to maintain such suit. In any suit for recovery of taxes illegally collected, the court shall adjudge costs as in other civil actions. \* \* \*." (Emphasis added.)

Univar argues that because the ordinance did not expressly state that "all" grounds and reasons for the protest must be set forth, Phoenix City Code, Chap. 14, Art. I, § 14–29(a), some may be subsequently raised. Univar also relies heavily on the language of the ordinance which gave the Superior Court "original jurisdiction" on review. Phoenix City Code, Chap. 14, Art. I, § 14–29(d). Citing authority in this state for the proposition that such jurisdiction is synonymous with de novo review, Univar asserts that this required the matter to be heard by the Superior Court "in the same manner as though it were an original proceeding in that court." *Duncan v. Mack,* 59 Ariz. 36, 42, 122 P.2d 215, 218 (1942). Univar would have us interpret this to allow the Superior Court to consider the new issues raised in the amended complaint.

We disagree with both facets of Univar's position. The language of § 14–29(a) that "grounds and reasons" be set forth, together with its statement in § 14–29(d) that the taxpayer must protest "in the manner herein provided" combined to mandate that *all* grounds be raised in the protest. Those not so raised could not be reviewed by the Superior Court. This is in keeping with the practice of compelling a taxpayer to scrupulously follow statutory procedures when seeking a refund because of the public policy discouraging suits for the refund of taxes even where illegally collected. *Southern Pacific Co. v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963); *Bodco Building Corp. v. Arizona State Tax Commission,* 5 Ariz. App. 589, 429 P.2d 476 (1967).

The case cited by Univar as defining "original jurisdiction" to mean adjudication as though the case were an original proceeding did so for the purpose of allowing the Superior Court to consider new evidence, not new issues. *Duncan v. Mack, supra. See also Davis v. Brittain,* 89 Ariz. 89, 358 P.2d 322 (1960); *Herzberg v. State ex rel. Humphrey,* 20 Ariz.App. 428, 513 P.2d 966 (1973). To extend this reasoning to include the raising of new issues before the Superior Court in this case would not only be a misinterpretation of the language of the ordinance but would be contrary to the doctrine of exhaustion of administrative remedies. This doctrine is firmly entrenched in Arizona, *e. g. Campbell v. Chatwin,* 102 Ariz. 251, 428 P.2d 108 (1967), for such sound reasons as judicial economy and reliance on the expertise of the administrative body for initial adjudication. *See Mountain View Pioneer Hospital v. Employment Security Commission,* 107 Ariz. 81, 482 P.2d 448 (1971). The United States Supreme Court has stated the general rule:

"A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter \* \* \*." *Unemployment Compensation Commission v. Aragan,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136, 146 (1946).

■ This Court has held that the exhaustion of remedies rule should not be summarily applied under certain circumstances. These are cases in which the remedy is permissive under the authorizing statute; in which jurisdiction of the agency is being contested; in which the agency's expertise is unnecessary; or in which irreparable harm will be caused if the rule is followed. *Campbell v. Chatwin, supra.* None of these exceptional circumstances is present in the instant case. We find, therefore, that the Superior Court properly dismissed those counts in the amended complaint that raised grounds for relief not proffered in the protest.

■ Univar's second contention is that its sales consummated outside the city limits of Phoenix are not subject to the city's privilege license tax. It submits that such an application of the tax is extraterritorial and that the city has no authority under the City Charter or State Constitution to levy a tax beyond its borders. Univar views the ordinance imposing the tax as precluding such an application or, in the alternative, as ambiguous on its face requiring construction in favor of Univar.

We must examine the following portions of the ordinance as they existed at the time of Univar's audit period, July 1970 through February 1973:

"Sec. 14–2. Imposition of tax; tax schedule.

"There is hereby levied upon persons *on account of their business activities within the City,* and shall be collected by the Collector for the purpose of raising revenue to be used in defraying the necessary expenses of the City, privilege taxes to the extent hereinafter provided, to be measured by the gross sales or gross income of persons, *whether derived from residents of the City or not, or whether derived from within the City or from without,* and all of said gross sales or

gross income shall be used to measure the tax with exceptions as set forth in Subsections (b) and (d) of this Section, and in Section 14–40 and Section 14–41 of the Phoenix City Code in accordance with the following schedule:

"(a) An amount equal to one percent of the gross proceeds of sale or gross income from the business upon every person engaging or continuing within the City in the following businesses:

\*   \*   \*   \*   \*   \*

"(8) Selling any tangible personal property whatsoever at retail, except bonds and stocks.

"Sec. 14–40. Exemptions.

"The provisions of this Article shall not apply:

\*   \*   \*   \*   \*   \*

"(j) To gross proceeds of sale or gross income derived from the sale of tangible personal property when:

"(1) Transference of title and possession occur without the City, *and*

"(2) The stock from which such personal property was taken was not within the corporate limits of the City, *and*

"(3) The order for the tangible personal property was placed without the corporate limits of the City.

"For the purpose of this exemption it matters not that all other indicia of business occur within the City, including, but not limited to, accounting, invoicing, payment, centralized purchasing and supply to out-of-City storehouses and out-of-City retail branch outlets from a primary storehouse within the City. \* \* \*" (Emphasis added.) Phoenix City Code, Chap. 14, Art. 1 (1969).

This Court has held that the predecessor of § 14–2,[4] interpreted to include imposition of the tax on sales consummated outside the city, was authorized by the State Constitution and the City Charter. *See City of Phoenix v. Arizona Sash, Door & Glass Co.,*

---

4. This section of the ordinance, as it existed at the time of *City of Phoenix v. Arizona Sash, Door & Glass Co.,* 80 Ariz. 100, 293 P.2d 438 (1956), was substantially the same as it is today, except that it did not contain the phrase

"whether derived from residents of the City or not, or whether derived from within the City or without." Phoenix City Code, Chapter 17, Art. II, § 6 (1951).

80 Ariz. 100, 293 P.2d 438 (1956). This decision is logically based. The Charter provides for the licensing, for regulation and revenue, of every kind of business "to be transacted or carried on in the city." Phoenix City Charter, Chap. 4, § 2(28) (1969). One of the businesses so licensed under the ordinance is the selling of tangible personal property at retail. Phoenix City Code, Chap. 14, Art. I, § 14–2(a)(8) (1969). The taxable event under the ordinance, however, is the activity of engaging in business within the city and not the sale itself (i. e., the transfer of title). *See City of Phoenix v. Arizona Sash, Door & Glass Co., supra; Arizona State Tax Commission v. Ensign,* 75 Ariz. 220, 254 P.2d 1029 (1953); *Arizona State Tax Commission v. Southwest Kenworth, Inc.,* 114 Ariz. 433, 561 P.2d 757 (App.1977), *cert. denied,* 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977). The tax, therefore, is not extraterritorial and is authorized by the Charter if the taxpayer participates in substantial enough activity within the city so that it may be viewed as "carrying on business in the city," even if it consummates the sale outside the city.

Univar relies on *City of Phoenix v. Borden Co.,* 84 Ariz. 250, 326 P.2d 841 (1958) and *City of Phoenix v. Phoenix Newspapers, Inc.,* 100 Ariz. 189, 412 P.2d 693 (1966) as precedent for interpreting the current ordinance to forbid imposition of the tax under the instant circumstances. Both decisions did hold that retail sales made beyond the corporate limits of Phoenix were not subject to the privilege license tax.[5] Each, however, was expressly predicated on the wording of the taxing ordinance then in effect:

"There is nothing in the ordinance in question indicating the City intends the privilege tax to be measured by proceeds derived from sales outside the territorial limits of the city. * * * The wording of the Ordinance indicates it was never intended that proceeds or income from business transacted without the city limits would be taxed by the city * * *." *City of Phoenix v. Phoenix Newspapers, Inc.,* 100 Ariz. 189, 194, 412 P.2d 693, 696 (1966).

At the time of these cases, the predecessor of § 14–2 of the ordinance did not contain the phrase "whether derived from residents of the City or not, or whether derived from within the City or without." Additionally, when *Borden, supra,* was decided, the exemptions of § 14–40(j) were nonexistent.[6] Because of these changes, we find that the present ordinance does indeed indicate, clearly and unambiguously, that the city intends the tax to be measured by proceeds derived from sales consummated outside its territorial limits as long as they do not also involve the other two exempting situations provided in § 14–40(j)(2) and (3) and as long as the taxpayer participates in substantial business activity within the city in furtherance of the sales.

Univar does not claim exemption pursuant to the three exempting clauses of § 14–40(j). As we have previously decided today, it would have to have done so in the initial protest in order to obtain relief. Moreover, had it so protested, it is unlikely that Univar would have prevailed in its claim, because most of its products were shipped from its Phoenix warehouse. Thus, Univar would fail to fulfill § 14–40(j)(2) of the exemption provision, requiring stock to

5. These two decisions, thus, reached the opposite result from that in *City of Phoenix v. Arizona Sash, Door & Glass Co., supra,* without expressly overruling the latter case. They did so, however, strictly on the basis of interpretation of the language of the ordinance and not by finding that imposition of the tax on sales consummated outside the city was unauthorized by either the State Constitution or the City Charter. *City of Phoenix v. Arizona Sash, Door & Glass Co., supra,* had upheld imposition of the tax solely on the grounds that it was authorized by the State Constitution and the

City Charter. This decision did not undertake to interpret the language of the ordinance itself because, apparently, no such challenge was made.

6. The exemptions of § 14–40(j) came into effect on February 10, 1959. The relevant audit period in *Phoenix Newspapers, supra,* was January 1, 1957 through December 31, 1959. Thus, § 14–40(j) was in effect for almost eleven months of the audit period. This Court, however, did not mention § 14–40(j) in its opinion in *Phoenix Newspapers, supra.*

be taken from without the city in order to qualify for exempt status.

This taking of stock from within the city comprises substantial business activity by Univar within the city in furtherance of the sales and justifies imposition of the tax. That the selling of stock taken from within the city provides the nexus necessary for imposition of the tax is soundly based. Univar maintains sizable office, warehouse and related facilities within Phoenix from which it supplied most of the challenged sales. These facilities require and receive the benefit of important city services, such as police, fire, water and sewer. Thus, Univar maintains substantial contacts with the city in direct furtherance of its selling activities, even though transfers of title take place outside the city limits. The Superior Court was, therefore, correct in upholding imposition of the tax upon Univar's sales consummated outside the city.

Univar raises other arguments, in furtherance of its position on these issues, which do not merit discussion.

Judgment of the Superior Court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concurring.