645 P.2d 1251

SALT RIVER PROJECT AGRICULTUR-
AL IMPROVEMENT AND POWER
DISTRICT, a municipal corporation of
the State of Arizona; Chevron USA,
Inc., a California corporation, successor
to Standard Oil Company of California
Western Operations, Inc., Plaintiffs-Ap-
pellees,

v.

CITY OF PHOENIX, a municipal corpora-
tion of the State of Arizona; and Paul
Wenner, City of Phoenix Treasurer-As-
sessor, ex officio City Tax Collector, De-
fendants-Appellants.

No. 1 CA–CIV 4938.

Court of Appeals of Arizona,
Division 1, Department B.

March 16, 1982.

Rehearing Denied April 21, 1982.

Review Denied May 25, 1982.

Jennings, Strouss & Salmon by Leo R.
Beus, K. Layne Morrill, Phoenix, for plain-
tiffs-appellees.

Andy Baumert, City Atty. by Philip M.
Haggerty, Asst. City Atty., Phoenix, for
defendants-appellants.

OPINION

EUBANK, Judge.

This appeal involves the question of
whether the City of Phoenix has imposed a

valid tax upon a series of transactions involving the sale of diesel fuel by Chevron, U.S.A. Inc. to the Salt River Project Agricultural Improvement and Power District. The City Treasurer issued an assessment covering calendar years 1974, 1975, and 1976 against Chevron which, including penalties, amounted to $110,752.83 for these sales. The Salt River Project was contractually bound to pay this assessment, and paid it under protest while initiating the instant litigation.

The trial judge, on cross-motions for summary judgment, found that the diesel fuel receipts fell within the extra-territorial exemption of § 14–40(j), Phoenix City Code. Therefore, he entered judgment in favor of Chevron and the Salt River Project for the full amount of the assessment, as adjusted by factors not relevant to this appeal. The City appealed, arguing that this exemption is not applicable. Appellees contend, however, that the exemption is applicable, and that, if it is not, the tax itself is unconstitutional. We find that the exemption was designed to alleviate the constitutional arguments raised by appellees, and that it is applicable to the case at bar.

The exemption in question reads as follows:

The provisions of this Article shall not apply:

. . . .

(j) To gross proceeds of sale or gross income derived from the sale of tangible personal property when:

(1) Transference of title and possession occur without the City, and

(2) The stock from which such personal property was taken was not within the corporate limits of the City, and

(3) The order for the tangible personal property was placed without the corporate limits of the City.

For the purpose of this exemption it matters not that all other indicia of business occur within the City, including, but not limited to, accounting, invoicing, payment, centralized purchasing and supply to out-of-City storehouses and out-of-City retail branch outlets from a primary storehouse within the City.

Section 14–40(j), Phoenix City Code. The City concedes that the diesel fuel stock came from without the City, and that title to the fuel was transferred outside the City. The City contends, however, that possession was transferred within the City and that the orders were placed within the City. Upon our review of the undisputed facts, we do not agree with the City's contentions.

The record shows that the diesel fuel was stored by Chevron in California. Orders for the fuel were made from the Salt River Project offices in Tempe, Arizona, through a Phoenix branch office of Chevron. Chevron's Phoenix office relayed the orders to the California office of Chevron, which had the authority to fill the orders. The fuel was taken from Chevron's California storage tanks and shipped F.O.B. by Southern Pacific pipeline to Phoenix.* The Salt River Project made the arrangements for and bore the costs of transportation and the risk of loss for these shipments. Once in the Phoenix storage yards, the Salt River Project picked up the fuel through independent trucking contractors and distributed it to the various generating stations, all located outside of the City of Phoenix.

Although it is undisputed that the fuel passed through the City, we find that the fuel was in the possession of a common carrier, and therefore was in the constructive possession of the Salt River Project from the time it left the Chevron storage tanks in California. The nature of F.O.B. shipment implies that the seller delivers possession of the goods when they are placed in the hands of a common carrier acting as an agent/bailee for the buyer. *See State v. Hendrix*, 56 Ariz. 342, 346–47, 107 P.2d 1078, 1080 (1940); *O'Day v. George Arakelian Farms*, 24 Ariz.App. 578, 581, 540 P.2d 197, 200 (1975). *See also*, A.R.S. §§ 44–2336, 2357 (1967); J. White & R.

---

* On occasion, the fuel would come from El Paso, Texas, by the Southern Pacific Pipeline to Tucson, then from Tucson to Phoenix via a pipeline owned by the United States Government.

Summers, *Uniform Commercial Code*, § 5–2 at 140–42 (1972). In effect, we hold that title and possession were transferred at the same time under the facts of this case: at the time the diesel fuel was delivered to the Southern Pacific Pipeline for transportation.

Therefore, the sole issue remaining is whether the orders for the fuel were "placed" from within the City of Phoenix. The City contends that the orders were placed at the Phoenix branch office of Chevron. The Salt River Project contends that the orders were placed by telephone in Tempe, Arizona, or when accepted in California, at Chevron's main office.

The City Tax Code does not define when or where an order is "placed." The parties herein have not cited, nor can we find, any cases bearing on this particular issue. In our aid, however, are those cases construing the general nature of the Phoenix Privilege Tax. We believe that the reasoning of these cases sheds light on the issue currently before this Court.

In *City of Phoenix v. Arizona Sash, Door & Glass Co.*, 80 Ariz. 100, 293 P.2d 438 (1956), it was determined that the Phoenix Privilege Tax was a valid tax on the privilege of doing business in Phoenix, and that it applied despite the fact:

> ... that both the title and possession to a portion of the tangible property sold passes to the purchaser outside the corporate limits of the city.

80 Ariz. at 105, 293 P.2d at 441. Nevertheless, in *City of Phoenix v. Borden Company*, 84 Ariz. 250, 326 P.2d 841 (1958), the court held that the City could not tax retail sales occurring beyond the corporate limits of the City. In reaching this conclusion, the court relied upon the case of *Sedalia ex rel. and to the Use of Ferguson v. Shell Petroleum Corp.*, 81 F.2d 193, 196–97 (8th Cir. 1936) to the effect that,

> ... "there is a presumption that the governing body of the city was legislating with reference to the conduct of business within the territorial limits of the city, and there is nothing in the provisions of the ordinances indicating that it was the

intention to give them extraterritorial effect."

The reasoning of the *Borden* decision was reaffirmed in *City of Phoenix v. Phoenix Newspaper Inc.*, 100 Ariz. 189, 412 P.2d 693 (1966), wherein the court held that out-of-city sales and national advertising receipts were not taxable under the Phoenix City Code. The court stated:

> There is nothing in the ordinance in question indicating the City intends the privilege tax to be measured·by proceeds derived from sales outside the territorial limits of the city. There are many transactions and events requiring expenditures of both time and money outside the city of Phoenix before and after the printing of the newspaper. The wording of the Ordinance indicates it was never intended that proceeds or income from business transacted without the city limits would be taxed by the city, and the city under Sec. 2(b)7, of the ordinance can tax only that portion of gross income or proceeds of the publishing business that was conducted within its corporate limits.

100 Ariz. at 194, 412 P.2d at 696.

Since the *Borden* and *Phoenix Newspapers* decisions, the provisions of the Phoenix Tax Code relevant hereto have been amended. The current version, previously quoted, clearly evidences an intent not to tax proceeds from sales outside the City falling within the exceptions of § 14–40(j). In *Univar Corp. v. City of Phoenix*, 122 Ariz. 220, 594 P.2d 86 (1979), the Arizona Supreme Court addressed the significance of this amendment:

> Because of these changes, we find that the present ordinance does indeed indicate, clearly and unambiguously, that the city intends the tax to be measured by proceeds derived from sales consummated outside its territorial limits as long as they do not also involve the other two exempting situations provided in § 14–40(j)(2) and (3) and as long as the taxpayer participates in substantial business activity within the city in furtherance of the sales.

122 Ariz. at 225, 594 P.2d at 91. Speaking on the validity of such a tax, the court stated:

The tax, therefore, is not extraterritorial and is authorized by the Charter if the taxpayer participates in substantial enough activity within the city so that it may be viewed as "carrying on business in the city," even if it consummates the sale outside the city.

*Ibid.*

We believe that the exemption, expressed in § 14-40(j) of the Phoenix City Code, is a guide to determining whether the City considers the "carrying on business in the city" to be of such a substantial nature as to justify the imposition of its tax.

In its brief, Salt River Project contends that common, ordinary definitions of "order" and "placed" entitle it to the exemption because it placed its order for diesel fuel by telephone from Tempe, Arizona, which is a location without the corporate limits of the City of Phoenix. The City, on the other hand, relies on contract and sales (U.C.C.) principles contending that the Salt River Project order was placed in Phoenix because the documents reflecting the order and agreement were prepared in Phoenix and then mailed to Salt River Project.

The language of § 14-40(j)(3) exemption is clear, and hence the intent of the Council is clear. It states "The order for the tangible personal property was placed without the corporate limits of the city." It is the buyer who "places" an "order" not the seller. In this case, Salt River Project, the buyer, placed its order for a quantity of diesel oil by telephone from Tempe, Arizona, to Standard Oil, the seller, in Phoenix. Section 14-40(j)(3) exemption does not deal in contract or sales language, consequently, that contention must be rejected. We therefore agree with Salt River Project's contention.

Having determined that the requirements of § 14-40(j) exist, we further hold that the sales in question are exempt from Phoenix City taxation. The Salt River Project is therefore entitled to reimbursement of the assessments paid under protest. Because we so hold, we do not address the constitutional arguments raised by appellees.

Pursuant to undisputed facts not related to this appeal, the trial judge calculated judgment in the amount of $109,328.07. The parties herein do not dispute this calculation, and, therefore, the entry of summary judgment is affirmed in full.

JACOBSON, P. J., and HAIRE, J., concur.