776 P.2d 1061

**PITTSBURGH & MIDWAY COAL MINING COMPANY,**
Plaintiff–Appellee,

v.

**ARIZONA DEPARTMENT OF REVE-NUE,** Defendant–Appellant.

**NEUMANN CARIBBEAN INTERNA-TIONAL, LTD.,** Plaintiff–Appellant,

v.

**ARIZONA DEPARTMENT OF REVE-NUE,** Defendant–Appellee.

**HUNT BUILDING CORPORATION,**
Plaintiff–Appellant,

v.

**ARIZONA DEPARTMENT OF REVE-NUE,** Defendant–Appellee.

Nos. CV–87–0460–PR, CV–88–0110–PR
and CV–88–0353–PR.

Supreme Court of Arizona.

July 13, 1989.

Where State illegally collected use taxes from taxpayer, State was required to pay interest on amounts refunded to taxpayer, even though refund was made before action was filed.   A.R.S. § 42–1421, subd. C (Repealed).

---

Gallagher & Kennedy by Leslie T. Jones, Jr., Phoenix, for Pittsburgh & Midway Coal Min. Co.

Friedman & Caldwell by Steven M. Friedman, Phoenix, for Neumann Caribbean Intern., Ltd.

Jennings, Kepner & Haug by Carolyn M. Kaluzniacki, Phoenix, for Hunt Building Corp.

Robert K. Corbin, Atty. Gen. by J. Scott Halverson and Steven R. Partridge, Asst.

Attys. Gen., Phoenix, for Arizona Dept. of Revenue.

FREDERICK J. MARTONE, Superior Court Judge.

These consolidated appeals require us to decide whether the State of Arizona may keep a tax to which it is not entitled because the tax was not paid "under protest," even though at the time of the payment there was no dispute between the taxpayer and the state over the propriety of the tax. We hold that the state may not. Our jurisdiction arises under Ariz. Const. art. 6, section 5.

## I. STATEMENT OF THE CASES AND FACTS

Each of the consolidated cases arose as follows.

### A. *Pittsburgh & Midway*

Pittsburgh mined coal in New Mexico for sale to Arizona utilities. Pittsburgh paid an Arizona use tax, but paid New Mexico nothing based upon its view that the transactions were exempt from New Mexico taxes but were subject to the Arizona use tax. For that reason, the Arizona taxes were paid without protest in the amount of $3,475,726.80 for the three year period before December 1979.

In December of 1979, New Mexico assessed Pittsburgh for New Mexico sales tax. Once this happened, Pittsburgh simultaneously challenged the New Mexico tax in the New Mexico state courts, and paid the Arizona tax "under protest." When the New Mexico tax was ultimately upheld, Arizona refused to return the pre-December 1979 taxes because they were not paid "under protest." After exhausting its administrative remedies, Pittsburgh obtained summary judgment against the state in the Superior Court of Arizona in Maricopa County. The judgment was affirmed by the court of appeals. *P & M Coal Min. v. Dept. of Revenue*, 156 Ariz. 568, 754 P.2d 295 (App.1987).

### B. *Neumann Caribbean*

Neumann contracted with tribal housing entities to build homes for Indians on Indian reservations in Arizona. Between October 1, 1978, and September 30, 1981, Neumann paid transaction privilege (sales) taxes in the sum of $165,673.95. They were not paid "under protest" because at the time Neumann did not dispute the propriety of the tax. But in 1982, the United States Supreme Court held that federal law preempted state taxation of the gross receipts of a non-Indian contractor for the construction of tribal schools on the reservation. *Ramah Navajo School Board, Inc., v. Bureau of Revenue of New Mexico*, 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982). Arizona agreed that the case prevented it from taxing the activities of Neumann on the reservation, but refused a refund because the taxes were not paid "under protest." After exhausting its administrative remedies, the state obtained summary judgment against Neumann in the Superior Court of Arizona in Maricopa County. The court of appeals affirmed. *Neumann Caribbean v. Dept. of Revenue*, 156 Ariz. 581, 754 P.2d 308 (App.1987).

### C. *Hunt*

Like Neumann, Hunt performed work for tribal housing entities on Arizona Indian reservations. Between September 1979 and May 1983, it paid transaction privilege (sales) taxes in the amount of $193,026.20. Because it did not question the authority of Arizona to impose the tax, Hunt did not pay the taxes "under protest." Once *Ramah* was decided, Hunt sought a refund. Even though not paid "under protest," Arizona returned to Hunt taxes paid after the *Ramah* case was decided. But Arizona denied Hunt's claim for refund for pre-*Ramah* taxes paid. After exhausting its administrative remedies, Hunt's claim for a refund in the Superior Court of Arizona in Maricopa County was denied on the granting of the state's motion for summary judgment. The court of appeals affirmed the judgment by memorandum decision. *Hunt Building Corporation v. Arizona Department of Revenue*, No. 1 CA–CV 9698 (Jul. 12, 1988).

## II. DISCUSSION

Arizona concedes that it is not entitled to the taxes which are the subject matter of these consolidated cases. It argues that it can keep the taxes because their payment was unaccompanied by the words "under protest."

### A. *Use Tax*

■ As to the use tax at issue in *Pittsburgh*, Arizona relies on A.R.S. § 42–1421(B), which states in relevant part that "[a]fter payment of any tax ... under protest ... a taxpayer may bring action against the department in the superior court in Maricopa county for the recovery of any tax ... paid under protest." As to the transaction privilege taxes at issue in *Neumann* and *Hunt*, Arizona relies on A.R.S. § 42–1339(B), which provides in relevant part that "[a]fter payment of any tax ... under protest ... a taxpayer may bring action against the department in any superior court of the state for the recovery of the tax ... paid under protest."

Arizona also relies on numerous cases referring to a general rule that taxes voluntarily paid without protest cannot be recovered. *See, e.g., City of Phoenix v. Phoenix Newspapers, Inc.*, 100 Ariz. 189, 195, 412 P.2d 693 (1966); and, *Swift & Company v. State Tax Commission*, 105 Ariz. 226, 232, 462 P.2d 775 (1969).

On the other hand, Arizona concedes that there are exceptions to the general rule. For example, even though not paid "under protest," Arizona must refund taxes paid on obligations which are extinguished by prior payment. *Maricopa County v. Leppla*, 89 Ariz. 220, 223, 360 P.2d 227 (1961). And, relying on *Smotkin v. Peterson*, 73 Ariz. 1, 5, 236 P.2d 743 (1951), and *Bodco Building Corp. v. Arizona State Tax Commission*, 5 Ariz.App. 589, 591, 429 P.2d 476 (1967), Arizona concedes that it must refund taxes paid even when not marked "under protest" if at the time of the payment it had no "semblance of authority" to assess the tax.

We think Arizona's argument puts the taxpayer in a Catch–22 situation. It goes like this. You cannot recover an illegal tax unless you paid it "under protest," but you would only pay "under protest" if at the time of payment you protested the tax for some reason. Thus, if you must pay "under protest" to recover an illegal tax, you can only recover an illegal tax if you know it at the time of payment. But if you do not know the tax is unlawful at the time of payment, and therefore do not pay "under protest," you cannot recover the unlawful tax.

We know of no good purpose served by such a rule. It is argued that the "under protest" requirement puts the taxing authority on notice that it might not be able to keep the tax, and, therefore, it could hold the tax and not spend it until the matter is ultimately determined. But in this case, the state has conceded that this abstract reason for the rule does not apply. The state has not relied on these tax payments to its detriment.

Moreover, the rule would promote a senseless practice. All taxpayers would be advised to pay all taxes "under protest" just to cover themselves. It is not likely that the state or any other taxing entity would hold all such taxes in abeyance pending future resolution.

We are of the view that these cases are to be decided by a comprehensive analysis of the relevant statutes rather than reliance on common law rules and exceptions which evolved in other contexts. We begin with the use tax at issue in *Pittsburgh*. A.R.S. § 42–1421(B), upon which the state relies, is part of Title 42, Chapter 8, Article 2, A.R.S. § 42–1401 *et seq.* Article 2, read as a whole, informs us of when the payment of a tax "under protest" under A.R.S. § 42–1421(B) comes into play. A.R.S. § 42–1413(A) requires Arizona to credit or refund not only use taxes paid more than once as in *Leppla*, but also use taxes which have been "erroneously or illegally collected or computed." On its face, therefore, A.R.S. § 42–1413(A) would require the state to refund the use taxes paid by Pittsburgh since they were erroneously or illegally collected within the meaning of the relevant statute.

■ Does the payment "under protest" requirement of A.R.S. § 42–1421(B) apply to the state's obligation to refund under A.R.S. § 42–1413(A)? We think not. A.R.S. § 42–1421(B) is but part of a procedural process which begins with A.R.S. § 42–1414. A.R.S. § 42–1414 requires the state to give written notice of adverse tax determinations to the taxpayer. An aggrieved taxpayer may appeal to the Department of Revenue under A.R.S. § 42–1415. If the taxpayer fails to appeal, the determination under A.R.S. § 42–1414 is final. A taxpayer aggrieved by the department's determination of the appeal under A.R.S. § 42–1415, may appeal to the state board of tax appeals under A.R.S. § 42–1415.01. But once the state board decides the taxpayer's claim against the taxpayer, the "additional tax due shall be paid within thirty days after the board's decision has become final, but without prejudice to the right of the petitioner to pay the tax under protest and to bring an action within thirty days as provided in § 42–1421." A.R.S. § 42–1415.01(B).

It is clear that the payment of a tax "under protest" under A.R.S. § 42–1421 arises out of a setting in which the taxpayer is in fact protesting a tax and is required to pay pending judicial resolution. We thus see the significance of the payment "under protest" requirement of A.R.S. § 42–1421(B). It is an involuntary payment of a tax which a taxpayer must pay in order to obtain judicial review of a dispute with the state over the propriety of the tax in the first instance. It has no application to the State's obligation to refund erroneously or illegally collected taxes under A.R.S. § 42–1413. The statutory scheme is in harmony with a common sense understanding that unless a protest actually exists, payment "under protest" would not occur.

### B. *Transaction Privilege Tax*

■ The transaction privilege taxes at issue in *Neumann Caribbean* and *Hunt*, arise under Title 42, Chapter 8, Article 1, A.R.S. § 42–1301, *et seq.* Arizona relies on A.R.S. § 42–1339(B), which, like its use tax counterpart, A.R.S. § 42–1421(B), requires the payment of a tax "under protest" as a precondition to bringing an action against the Department of Revenue in the superior court. And, as in the case of the use tax, this provision is part of a procedural mechanism under which taxes are in fact protested at the time of payment.

Under A.R.S. § 42–1326, the state has an obligation to refund taxes "paid in excess of the tax lawfully due." This is the transaction privilege tax analogue to A.R.S. § 42–1413. It is undisputed that Neumann Caribbean and Hunt paid taxes in excess of taxes lawfully due within the meaning of the statute. Thus, by the express terms of A.R.S. § 42–1326, they are entitled to a refund. Is A.R.S. § 42–1339(B) a bar to that refund? When put in the context of the procedural scheme of which it is a part, it is not.

We begin with A.R.S. § 42–1327. As in the case of the use tax, the Department of Revenue must give a taxpayer written notice of a determination of deficiency. Under A.R.S. § 42–1338, a taxpayer aggrieved by the notice of deficiency may appeal to the Department of Revenue and under A.R.S. § 42–1338.01, if further aggrieved by the department's determination on appeal, the taxpayer may appeal to the state board of tax appeals. Under A.R.S. § 42–1338.01(B), if the board rules against the taxpayer, the tax must be paid but without prejudice to the right of the taxpayer to pay the tax "under protest" and bring an action under A.R.S. § 42–1339.

Thus, as in the case of the use tax, the payment of a tax "under protest" as a precondition to bringing an action in the superior court under A.R.S. § 42–1339 arises in the setting of a statutory scheme in which there is a dispute between the taxpayer and the Department of Revenue, and under which the taxpayer must pay a tax involuntarily as a precondition to bringing an action. Nothing in this scheme suggests that the payment "under protest" requirement of A.R.S. § 42–1339 also applies to the state's obligation to refund taxes paid in excess of the tax lawfully due under A.R.S. § 42–1326. The statutory scheme supports the position of *Neumann*

*Caribbean* and *Hunt,* and not that of the state.

We acknowledge that *Swift & Company v. State Tax Commission,* 105 Ariz. 226, 233, 462 P.2d 775 (1969), is to the contrary. In reaching ·our conclusion in *Swift,* we relied on *City of Phoenix v. Phoenix Newspapers, Inc.,* 100 Ariz. 189, 412 P.2d 693 (1966). But *City of Phoenix* did not purport to examine the statutory schemes under which the use tax and the transaction privilege tax are imposed. Instead, the decision was based upon the rule at common law that a voluntary payment of taxes without protest and not under duress cannot be recovered by a taxpayer.

In *Swift,* we also sought to distinguish *Maricopa County v. Leppla,* 89 Ariz. 220, 360 P.2d 227 (1961). In *Leppla* we allowed the recovery of taxes voluntarily paid and not "under protest" notwithstanding our acknowledgement of the common law rule at issue. To reach our result, we characterized *Leppla* as a case in which a tax obligation did not exist after the original payment by the taxpayer. We do not think *Leppla* can be so easily distinguished. No tax obligation existed in *City of Phoenix,* and no tax obligation existed in *Swift & Company.* We think that neither *City of Phoenix* nor *Swift & Company* can survive a careful analysis of the relevant transaction privilege tax and use tax statutes. Thus, to the extent that *Swift & Company* and *City of Phoenix* suggest a contrary result, they are no longer to be followed. An honorable government would not keep taxes to which it is not entitled, and the legislative scheme supports that result.

The application of a rule requiring payment "under protest," even when at the time of payment there is no dispute, has led to some harsh results which in turn has led to some unworkable exceptions. The "semblance of authority" doctrine is one of these. In *Neumann Caribbean,* for example, the state concedes that it would refund any post-*Ramah* taxes even though Neumann did not pay them "under protest." By applying the "semblance of authority" theory to the payment of a tax not "under protest," the outcome would depend upon the relative clarity of the law at the time of payment. The state has asked us to decide the *Neumann Caribbean* case based upon a distinction between two Indian tribal tax cases in the United States Supreme Court: *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); and *Ramah Navajo School Board, Inc., v. Bureau of Revenue of New Mexico,* 458 U.S. 832, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982). Such subtle distinctions cannot form the basis upon which the state will decide whether it will refund taxes, and whether a taxpayer should pay a tax "under protest." In the end, logic, common sense, and the relevant statutes suggest that payment "under protest" is required only when there is a protest in fact.

## C. *Subsequent Legislative Development*

We have discussed each of these cases under statutes applicable at the time of payment. Our decision is supported by subsequent legislative development. The payment "under protest" provisions discussed above, A.R.S. § 42–1421 and § 42–1339, were repealed effective July 1, 1986, and replaced by A.R.S. § 42–124. Similarly, the refund provisions, A.R.S. § 42–1413 and § 42–1326, were repealed on that same date and were replaced by A.R.S. § 42–129. The legislature consolidated the procedural mechanisms under which use and transaction privilege taxes could be disputed. Under A.R.S. § 42–129, the Department of Revenue must refund use and transaction privilege taxes "paid in excess of the amount actually due." If it fails to do so, then under A.R.S. § 42–130, the taxpayer may appeal to the department under A.R.S. § 42–122. If the taxpayer is aggrieved by the appeal to the department under A.R.S. § 42–122, the taxpayer may then appeal to the state board of tax appeals under A.R.S. § 42–124. A taxpayer aggrieved by the decision of the state board may bring an action in the superior court under A.R.S. § 42–124(B). In order to bring such an action after an adverse board decision, the taxpayer must pay the use or transaction privilege tax "under pro-

test." A.R.S. § 42–124(B)(2). The statute then makes express what was implied under the former regime. It provides as follows:

> Within the time limits set forth in § 42–115, a taxpayer who fails to protest the payment of any tax illegally or erroneously collected may file a claim for refund of the taxes paid. Such refund claims shall then be governed by § 42–130 and this section.

And, as discussed above, once the process begins under A.R.S. § 42–130, § 42–122, and § 42–124, the party who did not pay the tax "under protest" at the time of payment must then pay the tax "under protest" before proceeding to the superior court. Thus the statutes acknowledge that a payment "under protest" is required only as a prerequisite to a superior court action after an adverse administrative determination. Payment "under protest" is not required for use and transaction privilege taxes at the time of payment when no protest exists. Whatever ambiguity existed under the former regime has now been resolved by the express language of A.R.S. § 42–124(B)(2).

### D. *Interest*

■ Pittsburgh received a partial refund at the administrative level. Relying on A.R.S. § 42–1421(C), the state refused to pay interest on the amounts refunded because it refunded those sums before an action was filed. To be sure, A.R.S. § 42–1421(C) provides that the state will pay interest on the amount of tax recovered against the department by judgment "in such action." But we do not read the words "in such action" as a limitation on the obligation of the state to pay interest. The words "in such action" appear in a section in which an action is brought to recover taxes paid "under protest." Thus, it was natural to use the words "in such action." But for all the reasons stated above, A.R.S. § 42–1421 does not modify the state's obligation to refund excess payments under A.R.S. § 42–1413. It would be anomalous to suggest that a taxpayer must bring an action against the state for refund in order to get interest and yet not

be entitled to interest where the state acknowledges its obligation to refund without an action. There is nothing in A.R.S. § 42–1413 which suggests interest on the refunded amount need not be paid. We agree with the court of appeals below, 156 Ariz. at 573, 754 P.2d at 300, that *State Tax Com. v. United Verde E. Min. Co.*, 39 Ariz. 136, 147, 4 P.2d 395 (1931), requires the state to pay interest to Pittsburgh on amounts refunded to it at the administrative level.

Any ambiguity in the former statute has been resolved by A.R.S. § 42–134(G) which provides that, in the case of a claim for refund, interest shall be allowed and paid with respect to any tax from the date prescribed for the payment of that tax to the issue date of the refund warrant.

### III. CONCLUSION AND DISPOSITION

The state must refund the use and transaction privilege taxes at issue in these consolidated appeals because a tax must be paid "under protest" only when the payment is involuntary and part of a dispute between the taxpayer and the state at the time of payment. Where there is no dispute at the time of payment, a taxpayer would have no reason to pay "under protest." The state, of course, is protected by any applicable statute of limitations. A.R.S. § 42–115.

The judgment in *Pittsburgh* is affirmed. The judgment in *Neumann Caribbean* is reversed, and the case is remanded to the superior court for entry of judgment in favor of Neumann–Caribbean and against the state on Neumann Caribbean's claim for refund. The judgment in *Hunt* is reversed, and the case is remanded to the superior court for entry of judgment in favor of Hunt and against the state on its claim for refund.

GORDON, C.J., FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

Justice WILLIAM HOLOHAN did not participate in these cases. FREDERICK J. MARTONE, Associate

Chief Presiding Judge of the Superior Court of Arizona in Maricopa County was designated to sit in his place under Ariz.Const. art. 6, § 3.