170 P.2d 289

CITY OF PHOENIX v. SUN VALLEY BUS LINES, Inc.

No. 4809.

Supreme Court of Arizona.

June 28, 1946.

Richard Minne, City Atty., and William C. Fields, Asst. City Atty., both of Phoenix, for appellant.

Jerman & Thurman, of Phoenix, for appellee.

STANFORD, Chief Justice.

An action was brought in the superior court by the appellee, hereinafter called the plaintiff, against the appellant, hereinafter called the defendant, to have the court declare defendant's Ordinance No. 2559 unconstitutional and to refund plaintiff the sums collected by defendant under its ordinance.

That part of the ordinance under which the fees were collected is as follows:

"*Section 4014.* Fees:—The following license fees shall be paid by the owner, or lessee, or operator, and whether the ownership or operating interest is general or special, to-wit:

"For each auto bus having a seating capacity of seven passengers or less, the sum of $15.00 per annum; For each auto bus having a seating capacity of more than seven and not exceeding twelve passengers, the sum of $25.00 per annum; For each auto bus having a seating capacity exceeding twelve but not exceeding sixteen passengers, the sum of $35.00 per annum; For each auto bus having a seating capacity of more than sixteen passengers, the sum of $40.00 per annum, payable in advance."

The trial court rendered its judgment in favor of the plaintiff holding the ordinance unconstitutional and ordering defendant to refund the license fees paid by plaintiff.

Plaintiff at the time in question was operating ten auto busses each having a seating capacity of more than sixteen passengers and they were operating on the public thoroughfare of the City of Phoenix from a public station in said city between Phoenix and Tucson, Arizona, and other

places, and operated the same under a certificate of convenience and necessity issued to it by the Arizona Corporation Commission. Plaintiff claims, and the same is undisputed, that it has duly registered all of its motor busses and paid the registration fee required for same, and has also paid to the State of Arizona a license tax of 2¼% of gross receipts for the operation of the cars and paid the registered vehicle license tax on each motor bus as required by law.

The following two assignments of error and two propositions of law are submitted by the defendant:

"1. The trial court erred in holding that Ordinance No. 2559 of the City of Phoenix imposing a license fee on auto busses was void and unconstitutional."

"2. The Court erred in holding that Ordinance No. 2559 of the City of Phoenix was void in its entirety if any portion thereof was unconstitutional."

"1. A municipal corporation may impose a license fee on auto busses if the amount is not discriminatory and reasonably necessary for administering and carrying out regulations concerning such busses and expenses incident thereto."

"2. If a portion of Ordinance No. 2559 of the City of Phoenix is unconstitutional, the ordinance in its entirety is not void for that reason."

Defendant makes no argument as to the ordinance under which the City of Phoenix operates in this respect being a revenue measure, but mentions the ordinance as a police regulatory measure and quotes a portion of Section 16-601, A.C.A. 1939 as granting to the City of Phoenix, in addition to its charter powers, the following:

"*Enumeration of powers of cities.*—In addition to the powers already vested in cities by their respective charters and by the general laws, cities and their common councils shall have the following powers:

"1. To lay out and establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds, and vacate the same; to plant trees thereon; *to regulate the use thereof*; to prevent and remove encroachments or obstructions thereon, and to provide for lighting and cleansing the same; * * *." (Italics ours.)

Also defendant quotes Chapter 4, Section 2, Subdivision 15 of the Charter of the City of Phoenix: "(15) To regulate or prohibit the exhibition or carrying of banners, placards or advertisements, and the distribution of handbills in the streets, public grounds, or upon the sidewalk; to regulate or prevent the flying of banners, flags or signs across the streets or from buildings; to regulate or prohibit traffic and sales in the streets, alleys or public places; to prevent encroachments upon or obstructions to the streets and to require their removal."

Defendant submits the case of Sprout v. City of South Bend, 277 U.S. 163, 48 S.Ct.

502, 504, 72 L.Ed. 833, 62 A.L.R. 45. This case had to do with an ordinance exacting a $50 license fee on busses carrying twelve passengers. We quote: "It is true that, in the absence of federal legislation covering the subject, the state may impose, even upon vehicles using the highways exclusively in interstate commerce, nondiscriminatory regulations for the purpose of insuring the public safety and convenience; that licensing or registration of busses is a measure appropriate to that end; and that a license fee no larger in amount than is reasonably required to defray the expense of administering the regulations may be demanded. (Citing cases.) These powers may also be exercised by a city if authorized to do so by appropriate legislation. (Citing cases.) Such regulations rest for their validity upon the same basis as do state inspection laws, (citing cases) and municipal ordinances imposing on telegraph companies, though engaged in interstate commerce, a tax to defray the expense incident to the inspection of poles and wires. (Citing cases.) But it does not appear that the license fee herein question was imposed as an incident of such a scheme of municipal regulation; nor that the proceeds were applied to defraying the expenses of such regulation; nor that the amount collected under the ordinance was no more than was reasonably required for such a purpose. It follows that the exaction of the license fee cannot be sustained as a police measure. (Citing cases.)"

Also besides our code and the city charter quoted, defendant relies on our case of Northeast Rapid Transit Company v. City of Phoenix, 41 Ariz. 71, 15 P.2d 951.

Plaintiff (appellee) in presenting its case submits the question "Has the City of Phoenix power to prohibit the operation on the public highways of the State of Arizona of motor busses, operating as common carriers of passengers under a duly issued and subsisting certificate of public convenience and necessity from the Corporation Commission of the State of Arizona?" As we see it the question is, Has the City of Phoenix in this case police regulatory power to assess the sum set forth in the ordinance heretofore quoted? Plaintiff attacks the constitutionality of Part IV of the Phoenix Municipal Code, 1939, Chapter XIX, Restricted Trades and Callings, Article III thereof being the one that appertains to license fees upon auto busses, taxicabs and travel bureaus, upon the ground that the same is unconstitutional and being in contravention of Sections 2 and 3, Article 15, of the Constitution of Arizona, and of Section 66-901 and Article 5, A.C.A. 1939. The City of Phoenix was organized under Section 2, Article 13, of the State Constitution. Its charter is known as a "freeholder" or "home-rule" charter.

In our case of Gardenhire v. State, 26 Ariz. 14, 221 P. 228, 231, we said: "A freehold charter gives to a municipal corporation power to enact any and all rules, regulations, and ordinances 'consistent with

and subject to the Constitution and laws of the state.' It may provide for the exercise of powers by the corporation not delegated to it by the Legislature. It is not required to look to legislative authority before exercising a power, but to look to its 'organic law,' as it charter is called in the Constitution."

In reference to the City of Phoenix and its right of power, we said in our case of City of Phoenix v. Michael, 61 Ariz. 238, 148 P.2d 353, 354: "* * * and as such may exercise any powers of government 'consistent with, and subject to, the constitution and laws of the state.' That means that the powers exercised by the city must be in accord with the constitution and laws of the state, and not in conflict therewith."

In regard to municipalities having a home rule charter such as Phoenix, we quote from Section 2, Article 13 of the Constitution of Arizona under the heading of "Municipal Corporations" as follows: "Any city containing, now or hereafter, a population of more than three thousand five hundred may frame a charter for its own government consistent with, and subject to, the constitution and the laws of the state * * *" and that when ratified in an election and approved by the governor, "* * * shall become the organic law of such city and supersede any charter then existing (and all amendments thereto), and all ordinances inconsistent with said new charter. * * * Thereafter all courts shall take judicial notice of said charter."

In our case of Pacific Fruit Express Co. v. City of Yuma, 32 Ariz. 601, 261 P. 49, we stated that city charters under the above-mentioned section 2 of Article 13 do not give cities power to enact general tax laws relating to taxation of private car lines and where the tax laws of the city and state conflict, the state laws control.

Besides the charter giving power to the City of Phoenix, we have quoted from Section 16-601, supra, the additional powers of cities like Phoenix, but nowhere in said section is the power given to the city to issue licenses for the use of public highway by motor busses engaged in the transportation of people nor is there any authority in said section granting to the city the right to levy license fees or taxes for such operation and none to be found in the charter of the City of Phoenix, and even if it were found, such grant of power would be ultra vires and void for such power has never been delegated to the cities by the legislature or the laws of the state.

Sections 73-601 to 73-608, A.C.A.1939, have to do with assessments and levies in cities and towns, but have nothing to do with granting any power to assess and tax motor busses.

The clause in the Phoenix charter "to regulate or prohibit traffic and sales in the streets" cannot be taken to abrogate the power of the corporation commission in respect to fixing the license fees herein re-

ferred to. Yuma Gas, Light & Water Co. v. Yuma, 20 Ariz. 153, 178 P. 26.

Section 66-501, A.C.A.1939, under the heading of "Regulation of Public Highway Transportation", says: " 'Public highway' shall mean any public street, alley, road, highway or thoroughfare of any kind used by the public, or open to the use of the public as a matter of right for the purpose of vehicular travel."

■ "Highway" as defined in the municipal code included streets and public ways of cities or towns. Clayton v. State, 38 Ariz. 135, 297 P. 1037.

Sections 66-501 to 66-533, inclusive, appertain to the regulation of public highway transportation.

Section 66-502, supra, states: "No motor carrier or private motor carrier shall operate any motor vehicle on any public highway except in accordance with the provisions of this act."

Section 66-501, supra, says: "The commission is vested with the power and authority, and it shall be its duty, to supervise and regulate all motor carriers and private motor carriers."

Section 66-504, supra, states:

"In the regulation of common motor carriers of property or passengers, the commission shall have the authority

\*    \*    \*    \*    \*    \*

"To supervise and regulate such common motor carriers in all matters affecting the relations between such carriers and the public, and between such carriers and other common motor carriers, to the end that the provisions of this act may be fully carried out."

Section 66-506, A.C.A.1939, in part, is as follows: "No common motor carrier shall operate within this state as such carrier without first having obtained from the commission a certificate of public convenience and necessity. \*    \*    \*"

In our case of Northeast Rapid Transit Co. v. City of Phoenix, supra, we stated except upon certificate of convenience and necessity from the corporation commission motor vehicles may not be operated as common carriers for hire on any public highway, street, or alley.

Article 9, Section 11, Constitution of Arizona, states the manner, method and mode of assessing, equalizing and levying taxes in the State of Arizona shall be such as may be prescribed by law. That section was amended in 1940, and by such amendment it is stated:

"Beginning January 1, 1941, a license tax is hereby imposed on vehicles registered for operation upon the highways in Arizona.

\*    \*    \*    \*    \*    \*

"The legislature shall provide for the distribution of the proceeds from such license tax to the state, counties, school districts, cities and towns."

This leads us to believe that from the foregoing, cities like Phoenix are not to

levy and collect license fees and taxes upon motor vehicles such as herein mentioned.

Section 66-901 and 66-902, A.C.A.1939, enacted in 1941, control the distribution of the license taxes to cities such as Phoenix in accordance with the amendment to the constitution above referred to.

Section 66-256, A.C.A.1939, fixes the fee for license tax on commercial vehicles and our Section 66-518, A.C.A.1939, impose a license tax of 2¼% of the gross receipts of motor busses operating for hire upon public highways of our state.

■ Is the license fee which the City of Phoenix has assessed against the plaintiff's motor busses a regulatory measure? These matters are discussed in our cases of Smith v. Mahoney, 22 Ariz. 342, 343, 197 P. 704, and McAhren v. Bradshaw, 57 Ariz. 342, 113 P.2d 932. Also in the cases of Talley v. City of Blytheville, 204 Ark. 745, 164 S.W.2d 900; City of Pineville v. Meeks, 254 Ky. 167, 71 S.W.2d 33, the latter case carrying out the theory set forth in the case of Smith v. Mahoney, supra, finding that the ordinances fixed by the city were for revenue and not regulation and determined the same to be unconstitutional.

■ When every phase of the relation between public utility and the public rests in the State Corporation Commission to supervise and regulate, it operates to deprive municipalities of such power, and when it attempts to interfere with such delegated power of the commission its ordinances and acts are void. This seems to be the general rule in our country on this subject. In support of this we cite the case of Parker v. City of Silverton, 109 Or. 298, 220 P. 139, 31 A.L.R. 589. We also cite our own cases of Clayton v. State, supra; Keller v. State, 46 Ariz. 106, 47 P.2d 442; Horwith v. City of Fresno, Cal.App., 168 P.2d 767.

From the foregoing it is plain that we must affirm the judgment.

LaPRADE and MORGAN, JJ., concurring.