985 P.2d 1025

**UNION TRANSPORTES DE NOGALES,** Manuel Espinoza, Representative, Central De Minivans, by Jorge Sanchez, its Representative, and A's Shuttles Corp., by Hector Acuna, its Representative, Plaintiffs,

v.

**The CITY OF NOGALES.**

No. CV–98–0359–CQ.

Supreme Court of Arizona,
En Banc.

Aug. 26, 1999.

Jesus Romo Vejar Tucson and Anthony B. Ching, Tempe, Attorneys for Plaintiffs.

Mesch, Clark & Rothschild, P.C., Tucson, by Scott H. Gan, Alan N. Ariav and Hugh A. Holub, Nogales City Attorney, Nogales Attorneys for The City of Nogales.

## O P I N I O N.

JONES, Vice Chief Justice.

¶ 1   We respond to two questions of state law certified by Judge Frank R. Zapata of the United States District Court for the District of Arizona.   The questions are:

1.   Does the City of Nogales, an Arizona Charter city, have the power to impose taxes or license fees on motor vehicles used in a business within the city based on the number of seat belts in each vehicle?

2.   Do Arizona Charter cities have the power to regulate taxis and shuttles which carry people between different Arizona cities?

The court has jurisdiction pursuant to Arizona Revised Statutes §§ 12–1861 through 12–1867 and Rule 27 of the Rules of the Supreme Court.

### FACTS

¶ 2   We rely on the certification order as the factual basis for this opinion pursuant to Rule 27(a)(3)(B) and A.R.S. § 12–1863 and on undisputed facts set forth in the briefs submitted by the parties.

¶ 3   The plaintiffs transport passengers intra-city, i.e., from one point to another within the corporate limits of the City of

Nogales. Plaintiffs also transport passengers inter-city, i.e., into Nogales from points outside the City and out of Nogales from points within the City.

¶ 4   On December 3, 1997, the City of Nogales, a charter city established under article XIII, section 2 of the Arizona Constitution, exercised emergency legislative powers and passed Ordinance 097–12–05, a local law that imposed a licensing fee on plaintiffs' business operations. The plaintiffs brought this action in the United States District Court challenging the ordinance on various federal and state grounds. We respond to the questions under our rules at the request of the district court.

¶ 5   Pertinent details of the Nogales ordinance should be considered. Section 18–300 states that the purpose of the ordinance is

to regulate the use of City streets and sidewalks by parties furnishing Taxi, minivan, Inter-city Bus, Municipal Bus and/or Shuttle transportation services within the City of Nogales to require such activities to be conducted in an orderly and safe fashion and to afford visitors and citizens of the City of Nogales safe and efficient public transportation services.

Section 18–302 seeks to accomplish this purpose via licensing:

1.   *Operation.* No person shall operate a commercial public transportation service anywhere within the incorporated limits of the City of Nogales without first obtaining the following permits issued by the City of Nogales:

(a) a Public Transportation Vehicle Permit; and

(b) an Individual Operator's Permit. . . .

The Public Transportation Vehicle Permit requires payment of a yearly fee, assessed according to the seating capacity of each vehicle used in transporting passengers within Nogales. The Individual Operator's Permit is obtained by payment of a $10.00 fee per year for each vehicle operator. The ordinance requires that passenger pickup and drop-off occur only at terminal stations that have safe and adequate physical facilities, including restrooms. The remaining provisions of the ordinance address: (1) re-quirements for transfer, display, and replacement of permits; (2) safety and health requirements in relation to the vehicles used to transport passengers; (3) fare disclosure requirements; and (4) penalties for violation of any of the ordinance's provisions.

¶ 6   The brief filed by the City of Nogales recites the concerns that led to passage of the ordinance. Under an earlier ordinance, which imposed a tax on certain carriers based on gross sales, shuttle operators allegedly did not accurately report sales and were thus evading a substantial part of the tax. Additionally, the City claims that shuttle carriers caused street flow problems, blocked pedestrian access in some instances, and caused health and crime hazards because of a lack of adequate terminal facilities. Plaintiffs concede that these transport activities caused at least some of the City's concerns, though at oral argument in this court plaintiffs denied any intent to evade the prior taxing scheme.

## DISCUSSION

¶ 7   Although the certification order characterizes the tax as a "license fee on motor vehicles used in a business within the city," we view the ordinance as an occupational license tax on the business of transporting passengers for a fee. It is occupational rather than vehicular because it is not measured by the vehicle's value, mileage, or revenues. It is a fixed tax on particular business activity within the city.

¶ 8   Both certified questions ask whether a charter city possesses legal power to enact such an ordinance. The City contends the power stems automatically from Arizona's 1982 statutory deregulation which eliminated control of the motor carrier industry by the Arizona Corporation Commission. We disagree. The deregulation provisions of state law granted no power to local government, and no authority suggests the cities may rely on deregulation alone as an independent source of power over local business. Deregulation is irrelevant to our analysis except as it relates to the question of state preemption, discussed hereafter.

¶ 9  For the ordinance to be valid, the City must identify an affirmative and independent source of legislative power. Local government entities possess only that power delegated by state law. *See City of Phoenix v. Arizona Sash, Door & Glass Co.*, 80 Ariz. 100, 102, 293 P.2d 438, 439 (1956). Article XIII, section 2 of the state constitution expressly authorizes cities of 3,500 or more inhabitants to "frame a charter for [their] own government...." The charter must be "consistent with and subject to the Constitution and laws of the State." *Id.; see also* A.R.S. § 9–284(B) (Charter must be "consistent with and subject to ... general laws of the State not relating to cities."). Once approved by a majority vote of the city's electorate and the governor, section 2 states that the charter becomes "the organic law of such city." As the organic law, "the provisions of the charter supersede all laws of the state in conflict with such charter provisions insofar as such laws relate to purely municipal affairs." *Strode v. Sullivan*, 72 Ariz. 360, 365, 236 P.2d 48, 51 (1951) (emphasis added). Charter cities may thus legislate in areas of local concern, even those which may involve a statewide interest, subject always to the rule that the state may preempt the legislative field either directly or by implication. *See Jett v. City of Tucson*, 180 Ariz. 115, 121, 882 P.2d 426, 432 (1994) (noting that preemption must be clear and can occur through state passage of a comprehensive regulatory scheme occupying the "field").

¶ 10  Thus, a charter may reserve power to the city over local affairs "not delegated to it by the legislature" because a charter city "is not required to look to legislative authority before exercising a power, but to look to its 'organic law.' " *Gardenhire v. State*, 26 Ariz. 14, 24, 221 P. 228, 231 (1923). *See also Kendall v. Malcolm*, 98 Ariz. 329, 334, 404 P.2d 414, 418 (1965) ("The charter of a city is its organic law bearing the same relation as the constitution of the state bears to its statutes."); *Paddock v. Brisbois*, 35 Ariz. 214, 220, 276 P. 325, 327 (1929) (charter city can exercise powers over local matters "delegated to it by the Constitution and the laws of the state and its charter") (emphasis added); *Jett*, 180 Ariz. at 118, 882

P.2d at 429 ("[A charter city] may exercise all powers granted by its charter, provided that such exercise is not inconsistent with either the constitution or general laws of this state.").

¶ 11  Accordingly, we review the city charter to find authority necessary to enact the ordinance questioned. Both certified questions involve a matter of local concern. *See Mayor & Common Council v. Randall*, 67 Ariz. 369, 379, 196 P.2d 477, 483 (1948) ("The right to exact an occupational tax is purely a matter of local concern.").

¶ 12  Two charter provisions are of paramount importance. Section 4(*l*) grants power

> [t]o **license and regulate ... the carrying on of any and all professions, trades, callings, occupations and kinds of business carried on within the limits of said city and to fix the amount of license tax thereon** to be paid by all persons engaged in carrying on such places of amusement and such professions, trades, callings, occupations and kinds of business in said city; and to provide for the manner of enforcing the payment of such license tax....

(Emphasis added). Section 10(27) grants the board of aldermen the power

> [t]o **license, for the purpose of regulation and revenue, all and every kind of business, profession, calling, trade or occupation ... to be transacted or carried on in the city;** to fix the rates of licenses upon the same and provide for the collection thereof by suit or otherwise; to provide penalties for transacting such businesses, professions, callings, trades or occupations without license when the same is fixed and prescribed.

(Emphasis added).

¶ 13  The charter clearly authorizes an ordinance on businesses operating exclusively within the city limits. Pursuant to charter section 4(1), plaintiff-transporters are "carrying on ... [a] profession[ ], trade[ ], calling[ ], occupation[ ] [or] kind[ ] of business ... within the limits" of the City of Nogales. And, the ordinance is "for the purpose of regulation and revenue" pursuant to charter section

10(27). These provisions reserve the necessary power in the municipality to impose an occupational tax on businesses that operate motor carriers exclusively within the limits of the city.

¶ 14   The present case differs from situations in which the power to tax has not been affirmatively delegated, as in *Arizona Sash*, 80 Ariz. at 102, 293 P.2d at 439 ("general welfare" provisions in a city's charter did not grant authority to enact a privilege tax applicable to all businesses in Phoenix). The Nogales charter provisions expressly grant power to enact a license tax on intra-city carriers. *See also Russo v. City of Tucson*, 20 Ariz.App. 401, 403, 513 P.2d 690, 692 (1973) (City of Tucson privilege tax did not seek to regulate lawyers *per se* but instead imposed a tax on their business activity within the city).

¶ 15   The second question, addressing regulation of "taxis and shuttles which carry people between different Arizona cities," requires separate consideration. We interpret the question's use of the phrase "power to regulate" as asking whether the Nogales charter provisions authorize imposition of the tax on inter-city carriers, including those headquartered outside Nogales which do not confine their operations solely to Nogales, yet have a "business presence" within Nogales' corporate limits.

¶ 16   We addressed the business presence issue in *Univar Corp. v. City of Phoenix*, 122 Ariz. 220, 594 P.2d 86 (1979). There, a privilege tax was imposed by the City of Phoenix, a charter city, on a manufacturer of goods warehoused in Phoenix but having significant sales both inside and outside the city limits. The tax was imposed on all sales activity from the warehouse. We determined the tax was valid, notwithstanding significant sales activity outside the Phoenix city limits:

> The taxable event under the ordinance ... is the activity of engaging in business within the city and not the sale itself (i.e., the transfer of title). The tax, therefore, is not extraterritorial and is authorized by the Charter if the taxpayer participates in substantial enough activity within the city so that it may be viewed as "carrying on

business in the city," even if it consummates the sale outside the city.

*Id.* at 225, 594 P.2d at 91 (emphasis added). Storing and selling goods within the Phoenix city limits provided "the **nexus** necessary for imposition of the tax on all sales" originating from the warehouse. *Id.* at 226, 594 P.2d at 92 (emphasis added).

¶ 17   Although the Nogales ordinance is not identical to the *Univar* privilege tax, we conclude the *Univar* nexus principle addresses today's issue—whether the Nogales charter authorizes a taxing ordinance which affects business activity that is ongoing both inside and outside the city limits. Specifically, the Nogales ordinance can be held valid under the charter only if parties subject to the tax have "substantial enough activity within [Nogales] so that [they] may be viewed as 'carrying on business in the city.'" *See Univar*, 122 Ariz. at 225, 594 P.2d at 91.

¶ 18   The existence of a motor carrier's business office outside Nogales would not negate the tax if the carrier's presence in Nogales is "substantial enough" to satisfy the *Univar* standard. Thus, where sufficient business presence is found, the same charter provisions discussed in relation to intra-city transport authorize imposition of the Nogales ordinance on inter-city transport.

¶ 19   The nexus test answers the second question. The determination must be made case by case. Here, the tax is imposed on carriers who pick up and drop off passengers at established locations inside Nogales. Pickup and drop-off is accomplished pursuant to a regular schedule. Carriers are required to furnish terminal station facilities in Nogales that meet standards, and carriers drive vehicles on routes into and out of the City. The Nogales tax on inter-city transport is authorized by the charter because the totality of plaintiff's business activity generates substantial presence inside Nogales' corporate limits and thus satisfies the *Univar* test.

## State Preemption

¶ 20   Finding the ordinance within the scope of the Nogales charter does not conclude our analysis. We must determine as well whether the ordinance, despite authorization by the charter, is preempted by the

statutory or constitutional law of the state. *See Jett,* 180 Ariz. at 121, 882 P.2d at 432. Preemption becomes an issue when the charter city legislates in contradiction to state law or over a subject that is in a "field" already fully occupied by state law. *See id.* at 121–22, 882 P.2d at 432–33 (a statewide regulatory scheme gives rise to a preemptive inference). Because no state law precludes the Nogales ordinance, the preemption argument turns on whether the legislature has occupied the field to which the ordinance is addressed.

¶ 21 In *Jett,* we held that to find preemption through state occupation of the field, "[t]he existence of a preempting policy must be clear. Also, the assertedly competing provisions in question **must be actually conflicting rather than capable of peaceful coexistence.** Mere commonality of some aspect of subject matter is insufficient."

*Id.* at 121, 882 P.2d at 432 (quoting *City of Prescott v. Town of Chino Valley,* 163 Ariz. 608, 616, 790 P.2d 263, 271 (App.1989)) (emphasis added).

■ ¶ 22 The relevant preemptive field in this case is occupational licensing taxation. The district court's certification order refers to *Ryder Truck Rental, Inc. v. City of Phoenix,* 172 Ariz. 490, 838 P.2d 829 (Super.T.C.1992), an Arizona tax court decision arguably providing evidence that the Nogales ordinance is preempted. In *Ryder,* the tax court concluded the taxpayer was exempt from a local privilege tax on motor vehicle leasing by reason of an exemption in the motor carrier tax statutes extant between July 1983 and November 1986. The tax court, however, was reversed and its order vacated by *Ryder Truck Rental, Inc. v. City of Phoenix,* 179 Ariz. 537, 542, 880 P.2d 1083, 1088 (App.1993). In the latter opinion, the court of appeals analyzed the text and legislative history of what is now A.R.S. § 28–5860 and upheld the tax, concluding that the preemptive scope of the statute was restricted "solely to taxes calculated on receipts from using motor vehicles to transport goods or passengers on the state's highways." *Id.* The statute prohibited taxes on gross receipts from the use of vehicles, and the *Ry-*

*der* tax was not such a tax, but was a levy measured by vehicle rental income, as in the business of renting any personal property for consideration. Similarly, the Nogales tax is not assessed on a vehicle's gross receipts but on plaintiffs' local business activity, calculated merely on a vehicle's seating capacity. Neither *Ryder* nor section 28–5860 preempts the Nogales ordinance.

■ ¶ 23 Nothing in our statutes or constitution preempts a charter city from enacting an occupational license tax on motor carrier activity within the city that is substantial under the *Univar* test. Indeed, rather than signal an intent to preempt the field of local licensing, the state legislature, in A.R.S. § 11–1601(C), affirmatively contemplates that "[l]icenses that are required by ordinances of a city or town are in addition to the license required by this chapter." In *City of Tucson v. Tucson Sunshine Climate Club,* 64 Ariz. 1, 6, 164 P.2d 598, 601 (1945), we noted that local legislation "cannot contradict the state law, but it may parallel it, or even go beyond it, so long as the two are not in conflict." We find no conflict between relevant state statutes and the Nogales ordinance. Because no conflict exists, the city has not legislated inconsistently with state law.

■ ¶ 24 Regulating and taxing the field of local occupational licenses in this case touches as well the field of motor carrier transportation. Based on this overlay of regulatory subjects, plaintiffs rely on *City of Phoenix v. Sun Valley Bus Lines, Inc.,* 64 Ariz. 319, 170 P.2d 289 (1946) to support the argument that the Nogales ordinance is preempted. In *Sun Valley,* we invalidated a Phoenix licensing ordinance that imposed a fee on auto buses according to seating capacity. We stated that nowhere in state law

is the power given to the city to issue licenses for the use of public highway[s] by motor buses engaged in the transportation of people nor is there any authority in said section granting to the city the right to levy license fees or taxes for such operation and none to be found in the charter of the City of Phoenix, and even if it were found, such grant of power would be ultra

vires and void for such power has never been delegated to the cities by the legislature or the laws of the state.

*Id.* at 323, 170 P.2d at 291. *Sun Valley* does not control or alter our responses to the questions certified. The case was based on the Arizona Corporation Commission regulatory scheme in force in 1946 which expressly preempted local regulation over all aspects of motor carrier transportation of passengers for hire. *See id.* at 323–25, 170 P.2d at 291–93. Arizona Corporation Commission authority then in existence was what led the court to label as "ultra vires" any local tax on the business of for-hire passenger transport. *See id.*

¶ 25 This state's 1982 deregulation of motor carriers removed the preemptive roadblock that led to our *Sun Valley* decision. In its place, the legislature enacted an extensive transportation scheme and empowered the Department of Transportation (ADOT) to administer and enforce that scheme. ADOT rules, regulations and statutes do not regulate the field of local occupational license taxation under *Jett* principles. Moreover, current ADOT regulations, as well as transportation-related statutes and the Nogales ordinance, are fully capable of "peaceful coexistence."

**The Taxation Formula**

¶ 26 As stated in question No. 2, the Nogales license tax is based on the number of seatbelts per motor carrier used in the city. Taxing formulae are matters normally left to the taxing authority and are not subject to judicial scrutiny. *See Tanque Verde Enters. v. City of Tucson,* 142 Ariz. 536, 540–41, 691 P.2d 302, 306–07 (1984). Indeed, there are numerous ways an occupational license tax can be properly assessed. The seatbelt methodology chosen by Nogales is not unreasonable. *See City of Tucson v. Arizona Alpha of Sigma Alpha Epsilon,* 67 Ariz. 330, 337, 195 P.2d 562, 566 (1948) (when the mode of exercising a clearly delegated charter power is not prescribed in the charter, the city can exercise the power in any usual and appropriate manner).

**CONCLUSION**

¶ 27 We hold that the tax in question under City of Nogales Ordinance 097–12–05 is an occupational license tax and is an appropriate measure by which to regulate the business of transporting passengers for hire within the City. This holding applies both to intra-city transportation and to inter-city transportation, though in the latter case, substantial business activity must be present within the city limits of the taxing municipality to provide the essential nexus that ensures the local legislation is authorized by its charter. In this case, plaintiffs' business activity within Nogales provides the requisite nexus to justify the tax, and the local taxing power has not been preempted by the state legislature.

¶ 28 Accordingly, our responses to both certified questions are affirmative.

¶ 29 We also underscore what we do not hold. A charter city, even with licensing provisions as in the Nogales charter, has no power to impose a direct tax on motor vehicles as the principal object of the ordinance and may not impose a tax measured by the gross receipts of a motor carrier's business. We note further that federal equal protection and commerce clause challenges are not before this court. We respond solely to the narrow questions certified to us by the district court.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, STANLEY G. FELDMAN, Justice, FREDERICK J. MARTONE, Justice, and RUTH V. McGREGOR, Justice.